THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* WILLIAM PHIPPS, Defendant-Appellee.

Fourth District    No. 15546

Opinion filed July 17, 1981.

Robert J. Berry, State's Attorney, of Lincoln (Robert J. Biderman and Garry W. Bryan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Fuller, Hopp & Barr, P.C., of Decatur (Richard W. Hopp, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Simply stated, the question presented is this:

To what extent is a defendant in a criminal action entitled to discovery of confidential psychiatric files of a State witness, which are in the custody of the Illinois Department of Mental Health and Developmental Disability (DMHDD)?

(This case is presently before us on remand from our Supreme Court. 83 Ill. 2d 87, 413 N.E.2d 1277.)

Defendant was charged with cruelty to persons (Ill. Rev. Stat. 1977, ch. 23, par. 2368), maltreatment of a mentally retarded person (Ill. Rev. Stat. 1977, ch. 91½, par. 15—1), and battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—3(a)(1)), all offenses having occurred while defendant was an employee of the Lincoln Developmental Center.

He filed a pretrial motion for discovery which requested, *inter alia*, the names and addresses of all persons to be called as witnesses by the State. The State's answer listed 20 witnesses that it intended to call.

Defendant next filed a motion for additional discovery which asserted that seven witnesses listed in the State's answer were residents of the Lincoln Developmental Center, that the State maintained personal files on these individuals, and that the files contained mental evaluations, intelligent quotients, statements concerning the truth and veracity of the witnesses, and other unknown information which concerned the proposed witnesses. It was requested that the State furnish defendant with a copy of these files. This motion was granted by the trial court.

The State then asked the court to reconsider its order of discovery, asserting that the requested material was in the control of the DMHDD. That agency had informed the prosecutor that the files were not available because they were confidential under the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1979, ch. 91½, pars. 801 through 817).

The trial court entered an order stating that the Mental Health Code did not forbid the production of the material, but rather, gave the patient or his therapist a privilege to prevent disclosure. The court said that any witnesses who invoked the privilege, or on whose behalf it was invoked, would not be permitted to testify. Those who complied with the discovery order could testify.

On appeal, the State initially argues that the trial court's order was erroneous because the request for material was unreasonable and because there was no showing that the material was relevant. The trial court's order was presumably entered pursuant to Supreme Court Rule 412(h), which provides:

> "(h) Discretionary disclosures. Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by this rule." 73 Ill. 2d R. 412(h).

The State argues that defendant's conclusory statement in his request for additional discovery, without any specific allegations as to how the information could be used, was not sufficient to show materiality as

required by Rule 412(h). The State further argues that the substantial risk of embarrassment to the witnesses outweighs any usefulness to the defendant.

One must appreciate the dilemma which was presented to the trial court. It must be kept in mind that we are dealing with a criminal prosecution and the witnesses in question are residents of a State mental health institution. The allegations of the motion were clearly sufficient. While a jury would possibly view the testimony of these witnesses with suspicion, it takes little conjecture to conclude that the files could contain information which would be highly probative of the witnesses' truth, veracity, ability to perceive, and memory capabilities. Although we have not examined the files, on the record presented, we cannot conclude that the trial court has abused its discretion. The trial court's resolution was an obvious attempt to resolve an apparent conflict between countervailing principles.

In *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, the trial court, on a motion of the prosecution, issued a protective order prohibiting the defendant from questioning a key prosecution witness concerning the witness' adjudication as a juvenile delinquent and his probationary status at the time he identified the defendant as the perpetrator of the offense. The Supreme Court held that the sixth amendment right to confrontation meant more than being allowed to confront a witness physically and that the defendant was entitled to question the witness concerning his juvenile adjudication for the purpose of showing possible bias and prejudice. In so holding, the court found that the State's interest as a matter of its own policy to seek to preserve the anonymity of a juvenile offender must give way to defendant's paramount right of confrontation.

In *State v. Farrow* (1976), 116 N.H. 731, 366 A.2d 1177, the trial court suspended defendant's criminal prosecution for murder to allow the New Hampshire Supreme Court to determine the extent to which a certain doctor-psychologist-patient privilege of witnesses for the State must give way to the defendant's sixth amendment right to confrontation. Relying upon the decision in *Davis*, the court allowed a limited use of the evidence. In particular, the court held that the defendant's right to confrontation is limited to the use of such materials as are found to be essential and reasonably necessary to permit counsel to adequately cross-examine for purpose of showing unreliability or bias. To prevent abuse and to protect the witnesses from unnecessary embarrassment, it was held that the trial court should examine with counsel the records and other materials in question and determine what parts, if any, the defendant would be permitted to use.

It would also appear as if defendant has certain rights which are

guaranteed by the due process clause. In *People v. Lowe* (Crim. Ct. N.Y. 1978), 96 Misc. 2d 33, 408 N.Y.S.2d 873, the court declared that due process considerations require the disclosure to an accused of evidence favorable to him which is material to guilt or punishment. (*Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) The court further recognized that the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and accordingly courts have required disclosure of evidence tending to affect the credibility of a particular witness. The court noted that evidence of a mental illness of a witness is a fact that a jury is entitled to know so that it may assess and evaluate the testimony given by him and not accept it as the statement of a normal individual. This is so because the evidence bears not just upon the witness' general truthfulness, but also upon the reliability of a specific testimony. Finally, the court determined that the State's policy interest in protecting the confidentiality of the physician-patient relationship must yield to the mandate of the constitutional due process considerations when the need for disclosure is present. See also *Powell v. Wiman* (5th Cir. 1961), 287 F.2d 275.

The cross-examination of a witness is one of the safeguards of accuracy and truthfulness, and it is of course well accepted that when a witness has been examined in chief, the other party has the right to cross-examine for the purpose of ascertaining and exhibiting the situation of the witness with respect to the parties and to the subject of the litigation. Of particular relevance is the witness' interest, motive, inclination, prejudices, means of obtaining a correct and certain knowledge of the fact to which he is offering testimony, the manner in which he has used those means, and his powers of discernment, memory, and description. It may be broadly stated that in determining credibility of a witness or the weight to be accorded to his testimony, regard is generally given to his mental condition. Almost any emotional or mental defect may materially affect the accuracy of the testimony. A conservative list of such defects would have to include a psychosis, most neuroses, defects in the structure of the nervous system, mental deficiency, alcoholism, drug addiction, and psychopathic personality. Annot., *Cross-examination of a witness as to his mental state or condition to impeach competency or credibility*, 44 A.L.R. 3d 1203 (1972).

Against these interests of the defendant, the trial court was required to balance the interests of the recipient-witnesses. Section 10(a) of the Mental Health and Developmental Disabilities Confidentiality Act states:

"(a) Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent

the disclosure of the recipient's record or communications." (Ill. Rev. Stat. 1979, ch. 91½, par. 810(a).)

Clearly, the purpose of this Act is to protect the confidentiality of records and communications of recipients of mental health or developmental disabilities services.

At common law, a physician called as a witness had no right to decline or refuse to disclose any information on the ground that it had been communicated to him confidentially and in the course of his attendance upon or treatment of his patient in a professional capacity. Nor could the patient, in case the physician proved a willing witness, by objection, exclude such information, or as a witness himself, refuse to disclose any communication made by him to the physician. In other words, no testimonial privilege existed as to communications between the physician and patient. (58 Am. Jur. *Witnesses* §401 (1948).) It is commonly recognized that the purpose behind a psychotherapist-patient privilege is to induce the patient to make full disclosure so that proper treatment may be given and to prevent public disclosure of socially stigmatized diseases. See *In re Farrow* (1979), 41 N.C. App. 680, 255 S.E.2d 777; *State v. Kupchun* (1977), 117 N.H. 412, 373 A.2d 1325.

When, as in the instant case, a statutory evidentiary privilege comes in direct conflict with a defendant's constitutional rights of confrontation and due process, we hold that the former must give way so that the fundamental protections of our criminal justice system will not be abrogated.

The second aspect of the State's argument in this court is that the proper procedure for the trial court to employ would have been for the trial court to issue subpoenas to the DMHDD compelling production of the files. The State concedes that Supreme Court Rule 412(g) (73 Ill. 2d R.412(g)) outlines the procedure to be employed. The State then concedes that under that rule, the trial court has the discretion to either issue suitable subpoenas or other orders to cause such material to be made available to defense counsel. Thus, if one were to assume that the order in the instant case was one to cause the material to be made available, the trial court's actions would be specifically authorized under Rule 412(g). The State argues, however, that the order in the instant case does not insure that the material will be made available to defense counsel since the DMHDD or the witnesses may decide not to disclose despite the consequences of exclusion.

Although the record clearly establishes that the trial court in the instant case made an honest, good faith, and conscientious effort to resolve the instant dispute, we must reverse his order. Under the peculiar facts of this case, the proper procedure would have been to issue a subpoena. In addition, the trial court should take specific note of the

policy of this State in maintaining the confidentiality of these files and should conduct a further inquiry into the reasonableness and materiality of the requested material.

The trial court's order is hereby reversed. Furthermore, the trial court is directed to issue subpoenas for the requested material to the DMHDD. Should either the therapist or the recipient assert their statutory privilege, the trial court is directed to hold an *in camera* hearing with the attorneys for the State and the defendant at which time the court is to examine the files in question and permit disclosure only of those files or portions of files which the court in its discretion determines are relevant and material for purposes of this prosecution.

Reversed and remanded with directions.

GREEN and LEWIS, JJ., concur.