THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE DACE, Defendant-Appellant.

Third District No. 82—552

Opinion filed May 26, 1983.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Patricia Hartman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

The jury convicted the defendant of residential burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19—3), and the trial court sentenced him to four years' imprisonment. The defendant now appeals his conviction on several grounds.

According to the State's evidence, the defendant and two accomplices burglarized a home on March 26, 1982, in Joliet, Illinois. The State's chief witness, Sherri Brown, testified that she and the defendant broke the door to the home and stole rings, watches, coins, two shotguns, a small television, a stereo system and some other items. After the burglary, Brown and the defendant went to the defendant's backyard. Some of the items were in the backyard. At some point, Dwayne Carpenter joined the defendant and Brown. Brown told Carpenter to retrieve a television set that they left in the house, and Carpenter did as requested.

Carpenter testified that he approached the defendant first with the idea of breaking into a home, but the defendant did not respond positively or negatively to that idea. According to Carpenter, he was

not involved in the initial breaking and entering, and he never saw the defendant enter the home. Carpenter also told the court that, when he first approached the defendant and Brown in the defendant's backyard, he noticed two shotguns resting in the grass. Carpenter admitted taking the television set at Brown's suggestion.

Another witness for the State, Ray Armstrong, testified that Carpenter, Brown and the defendant approached him while he was sitting on his porch. Armstrong was sitting with the defendant's uncle and another man. Brown and Carpenter initiated and dominated the conversation, asking him if he wanted to buy any of the goods. The defendant was silent for the most part, though he also asked Armstrong if he wanted to buy anything. At some point, Armstrong drove Carpenter, Brown and the defendant to the defendant's house. They did not stop there, however, when they saw a police officer in a squad car focusing a spotlight into the backyard. Armstrong dropped his passengers off at two different locations.

Three other witnesses—friends of the defendant—testified that Carpenter, Brown and the defendant were in their home at various times on the night of the burglary. These witnesses testified that they saw Brown with four to seven rings that evening, and that Brown admitted breaking into the house. In regard to the defendant, these witnesses neither saw him burglarize the house nor heard him admit to any wrongdoing. They did see the defendant wearing at least one and possibly two rings; they also testified, though, that they could not identify the rings he was wearing that evening and that the defendant usually wore one or two rings. The owner of the home also testified that he found the door broken, the house in disarray and several items missing. A police search of the defendant's home failed to produce any of the stolen items.

■ The first issue is whether the State proved the defendant guilty beyond a reasonable doubt. The defendant argues that the only evidence presented that he committed a burglary is the uncorroborated testimony of an admitted accomplice. Only Brown places the defendant at the residence and engaged in a breaking and entering. The defendant argues that Brown's testimony is weak and suspicious, because she was an accomplice, she testified for the State as a hostile witness, she pleaded guilty to a lesser charge of theft after negotiation with the State and she had a prior conviction for forgery. In addition, the defendant points to numerous inconsistencies and contradictions in the testimonies of all the State's witnesses. Carpenter's testimony was self-contradictory at some points, and he was not charged with any crime in spite of his admitted theft of the television

set. During cross-examination, both Brown and Carpenter denied receiving any deal from the State in exchange for their testimony.

Uncorroborated accomplice testimony can be sufficient to sustain a conviction. (*People v. Pittman* (1973), 55 Ill. 2d 39, 302 N.E.2d 7.) It is well settled that it is within the province of the jury to determine weight and credibility of testimony. In *People v. Miller* (1981), 94 Ill. App. 3d 725, 419 N.E.2d 78, the court upheld a conviction in which the sole identification testimony came from an accomplice. As in the case at bar, this accomplice pleaded guilty to a lesser offense and—according to the accomplice—he had not been promised anything in exchange for testimony against the accused. It is equally well established that the State may use circumstantial evidence and inferences drawn from such evidence to sustain a burglary conviction. (*People v. Johnson* (1980), 82 Ill. App. 3d 338, 404 N.E.2d 796; *People v. Blakeney* (1978), 59 Ill. App. 3d 119, 375 N.E.2d 1309, *cert. denied* (1979), 440 U.S. 915, 59 L. Ed. 2d 464, 99 S. Ct. 1231.) In this case, there is some circumstantial evidence which partially corroborates Brown's story.

■ Brown testified that she did not receive any promise or threat by the State in regard to her testimony against the defendant. She did, however, plead guilty to a lesser charge and receive a two year prison sentence. Even assuming, though, that she did receive a promise of leniency in exchange for her testimony, that alone would be insufficient to create a reasonable doubt of the defendant's guilt. (*People v. Sangster* (1981), 95 Ill. App. 3d 357, 420 N.E.2d 181.) The testimony of the other witnesses, which placed the defendant in possession of some of the stolen items and attempting to sell them, substantiates part of Brown's testimony. On the record before us, the State's evidence is sufficient to sustain the defendant's conviction.

■ The second issue is whether the trial court erred when it refused the defendant's request for discovery of the mental health history of the State's primary witness, Sherri Brown. The defendant discovered that Brown had been involuntarily committed to the Tinley Park Mental Health Center in August 1980. The defendant sought additional discovery concerning Brown's mental history. Brown and the State objected to this discovery, arguing that this information is privileged. The State gave the court the case file from the commitment proceedings, which the court reviewed *in camera*. The court ruled the records were privileged and they were too old to be relevant. The court also barred the defendant from questioning Brown on her mental history. On appeal, the defendant argues he was denied due process of law and a fair trial. The State argues the records are privileged

and the defendant has failed to demonstrate the relevance of the records or any prejudice to him.

The Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1981, ch. 91½, par. 801 *et seq.*) establishes a psychotherapist-patient privilege:

> "Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communication." (Ill. Rev. Stat. 1981, ch. 91½, par. 810.)

None of the exceptions would be applicable to the case at bar. Supreme Court Rule 412(h) (87 Ill. 2d R. 412(h)), provides for the discretionary discovery, by the defense, of other evidence not covered by other specific discovery rules:

> "Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by this rule."

In spite of the statutory privilege, it is well established that the mental history of a witness is relevant to his credibility and a permissible area of impeachment. (*People v. Lindsey* (1979), 73 Ill. App. 3d 436, 392 N.E.2d 278.) A thorough examination of a witness' credibility is especially important when that testimony will be determinative of the defendant's guilt or innocence. (*Lindsey.*) "Almost any emotional or mental defect may materially affect the accuracy of the testimony. A conservative list of such defects would have to include a psychosis, most neuroses, defects in the structure of the nervous system, mental deficiency, alcoholism, drug addiction, and psychopathic personality." *People v. Phipps* (1981), 98 Ill. App. 3d 413, 416, 424 N.E.2d 727.

In *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, the Supreme Court held that the sixth amendment right to confrontation entitled a defendant to question a witness concerning a juvenile adjudication, for the purposes of showing possible bias or prejudice, even though those records would be otherwise privileged. The court noted that the State's interest in preserving the anonymity of juvenile offenders must yield to a defendant's paramount sixth amendment rights.

In *People v. Phipps* (1981), 98 Ill. App. 3d 413, 424 N.E.2d 727, the court ruled that a defendant may discover the mental health histories of seven prosecution witnesses. In that case, the defendant was

charged with maltreatment of mentally retarded people and battery. The victims, residents of a mental health facility, were witnesses against the defendant. The court stated that "[w]hen *** a statutory evidentiary privilege comes in direct conflict with a defendant's constitutional rights of confrontation and due process, we hold that the former must give way so that the fundamental protections of our criminal justice system will not be abrogated." (98 Ill. App. 3d 413, 417.) The court directed the trial court to issue subpoenas to the mental health facility and, in the event either the therapist or the patient invoked a privilege, directed the trial court to hold *in camera* hearings with attorneys for the State and the defendant, for the purpose of determining which information is relevant and material.

The Fourth District apparently narrowed the *Phipps* holding, however, in *People v. Walton* (1982), 107 Ill. App. 3d 698, 437 N.E.2d 1273. In *Walton*, the defendant—charged with armed robbery—asked for discovery of the mental health records of the victim, who was the primary witness for the prosecution. The trial court denied discovery, and the appellate court affirmed, stating "[w]e do not deem the rule of *Phipps* to be so broad as to negate the necessity of establishing the pertinence of a witness' psychiatric condition or history to the credibility of his or her testimony before such evidence may be introduced or before a witness' otherwise confidential mental health records may be subpoenaed or discovered." 107 Ill. App. 3d 698, 703.

The *Walton* court distinguished *Phipps* in several ways. In *Phipps*, the witnesses were long-term residents of the facility and were in the institution at the time of the offense and at the time of the trial. (See also *People v. Di Maso* (1981), 100 Ill. App. 3d 338, 426 N.E.2d 972 (witness suffering from alcoholism at or near time of offense; records held discoverable).) In *Walton*, though, the witness was once a voluntary patient at a mental hospital, had successfully completed his treatment prior to the offense and had not returned to the facility prior to the trial. In the case at bar, there is no evidence as to when Brown was released from the mental hospital, what mental illness she suffered from or what treatment she received. There is no evidence in the record even indicating whether Brown completed her treatments.

Relying upon *Walton*, the State argues the defendant has failed to make the requisite showing which would entitle him to discovery of those records. The State claims that, in this case, all we have is the defendant's mere allegation that a witness has been institutionalized and a speculation that something in the mental health records would provide grounds for impeachment of the witness.

In essence, the State urges us to require the defendant to demonstrate the relevance and materiality of information to which he has no access. The record here already indicates that Brown was involuntarily committed because she was adjudged dangerous. There is no reasonable method for the defendant to establish any more than what is already known from court records. If the State's argument prevailed, a defendant would be unable to make the proposed showing unless, by some fortuity, the witness was either institutionalized at the time of the offense or trial or, even less likely, a witness voluntarily revealed his mental illness and treatment. As *Phipps* noted, there are several mental illnesses that can affect a witness' ability to accurately perceive and recall events. This critical ability would be unassailable by a defendant if he were required to demonstrate prejudice from the denial of information which is under the exclusive control of the State.

■ This does not necessarily mean that a defendant will be entitled to use at trial all the information that he discovered. If either the witness or the therapist seeks to invoke the privilege, the trial court should hold an *in camera* hearing the presence of prosecutors and defense counsel to determine which information is relevant or material to impeachment of the witness. (*Phipps.*) The introduction of evidence and the avenues of impeachment are within the reasonable discretion of the trial court, although the court should exercise that discretion with appropriate regard to a defendant's critical sixth and fourteenth amendment rights.

■ In this case, Brown's involuntary commitment occurred less than two years before the offenses occurred. The records which the court examined concerned the commitment proceedings itself, in which that court found Brown to be mentally ill and dangerous to others. The court had no information as to her diagnosis, treatment or release. The trial court could not reasonably conclude, from the absence of this information, that the mental health history of the witness was irrelevant and immaterial. Confronted with articulable evidence that raises a reasonable inquiry of a witness' mental health history, a court should permit a defendant to discover that history. If either the witness or the therapist wish to invoke the privilege, the trial court should conduct an *in camera* hearing in the presence of counsel for the State and the defendant, to determine which information would be relevant and material to the witness' credibility. This approach balances a defendant's sixth and fourteenth amendment rights with a witness' right to confidentiality of his mental health records.

■ Brown's testimony was the only evidence of the defendant's

participation in the burglary. The evidence of his guilt is not overwhelming. In fact, the conviction depended upon Brown's credibility. It cannot, therefore, be said that the inability to discover evidence that could seriously question Brown's credibility was harmless beyond a reasonable doubt. Thus, we reverse the defendant's conviction and remand this case to the trial court for a new trial, with directions to permit the requested discovery.

 █ The defendant also argues that the trial court erred when it refused to instruct the jury on the elements of theft. Considering the credibility problems of Brown, the defendant argues that the evidence of his possession of stolen property as well as his effort to dispose of that property would entitle him to an instruction on the lesser offense of theft by unauthorized control. (Ill. Rev. Stat. 1981, ch. 38, par. 16—1.) The State responds that theft is not a lesser included offense of burglary, so the defendant is not entitled to an instruction on that offense.

In general, a defendant is entitled to an instruction on a lesser included offense when all the elements of that offense are included within the greater offense and if there is some foundation in the evidence that would support a conviction for the lesser offense. (*People v. Ryan* (1981), 97 Ill. App. 3d 1071, 424 N.E.2d 20.) Since burglary does not require a taking and theft does not require an entry, theft is not a lesser included offense of burglary under this traditional definition of "lesser included offenses." *People v. Heard* (1980), 80 Ill. App. 3d 701, 400 N.E.2d 65; *People v. Shoemaker* (1975), 31 Ill. App. 3d 724, 334 N.E.2d 347.

██ The defendant acknowledges this traditional view, but asks this court to expand the concept of a lesser included offense for the purpose of instructing a jury. Relying upon a discussion of lesser included offenses in *People v. Mays* (1982), 91 Ill. 2d 251, 437 N.E.2d 633, and several Federal authorities, the defendant argues that a jury should be instructed on the elements of a lesser offense when the evidence produced at trial could support a conviction for that offense and when there is an inherent relationship between the greater and lesser offenses. This test is usually called the inherent relationship test.

In *Mays*, the defendant was charged with rape. He tendered a jury instruction on the offense of battery by bodily harm. The trial court refused this instruction and the supreme court upheld that ruling. The supreme court considered three tests of whether a lesser offense should be instructed upon. In the first, the court considered the abstract definitions of both crimes, concluding that battery by bodily

harm is not a lesser included offense of rape. This is the traditional test to determine the existence of an included offense. In the second test, the court considered whether an included offense could be determined by looking at the offense as it was charged in the information. The indictment at issue in *Mays*, however, merely recited the elements of the offense of rape and applied them to the defendant, with appropriate references to the victim and the date of the offense. Thus, this second test did not assist the defendant.

Finally, the court considered the inherent relationship test. Under this test, a court must—if requested by a defendant—instruct a jury on lesser offenses whose elements are shown by evidence produced at the trial. Several Federal courts have adopted this test. (*E.g., United States v. Johnson* (9th Cir. 1980), 637 F.2d 1224; *United States v. Pino* (10th Cir. 1979), 606 F.2d 908; *United States v. Whitaker* (D.C. Cir. 1971), 447 F.2d 314.) In *Johnson*, the Ninth Circuit explained that a lesser included offense "may be established by the evidence adduced at trial in proof of the greater offense," and that a defendant is entitled to an instruction on the lesser offense when there is an inherent relationship between the greater and lesser offenses. An inherent relationship exists when the two offenses "relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense." *United States v. Whitaker* (D.C. Cir. 1971), 447 F.2d 314, 319.

In *Mays*, the supreme court for the second time declined to approve or disapprove the inherent relationship test. (See *People v. Cramer* (1981), 85 Ill. 2d 92, 98, 421 N.E.2d 189 (court refused to intimate any view "upon whether the evidence as adduced at trial could support a defendant's tendered instruction where the terms of the indictment could not").) The court merely noted that there is no inherent relationship between rape and battery by bodily harm. (*People v. Mays* (1982), 91 Ill. 2d 251.) See also *People v. Johnson* (1982), 103 Ill. App. 3d 564, 431 N.E.2d 1381 (after noting the traditional test, court declined to consider an inherent relationship test where defendant requested instruction on theft but did not actually tender an instruction).

Although the State dismisses the Federal cases by noting that they are not controlling in Illinois, the reasoning of those cases is nonetheless persuasive. The strict, traditional view that a defendant is entitled to instructions on a lesser offense only when it is subsumed by the greater offense is a result of the mistaken belief in the need

for symmetry with a prosecutor's right to instructions on lesser included offenses. The State is restricted in its ability to request an instruction on a lesser offense because the defendant has a due process right to know the charges against him. (See *People v. Lewis* (1980), 83 Ill. 2d 296, 415 N.E.2d 319 (a defendant may be convicted of a lesser offense without violating due process right to notice, if each element of the lesser offense was a necessary ingredient of the greater offense with which he was charged).) In contrast, as *Mays* notes, the defendant's rights to an instruction on a lesser offense stems from an attempt to give him the full benefit of the reasonable doubt standard. (*Beck v. Alabama* (1980), 447 U.S. 625, 65 L. Ed. 2d 392, 100 S. Ct. 2382.) The State has no due process right to notice and, moreover, it cannot complain that it did not know what evidence it would produce against a defendant.

Courts have long recognized that jurors are likely to convict a defendant, even when proof of an element of a charged offense is questionable or missing, if the defendant is plainly guilty of some offense and the jurors have no other choice but conviction or acquittal. (*Keeble v. United States* (1973), 412 U.S. 205, 36 L. Ed. 2d 844, 93 S. Ct. 1993.) The availability of a lesser offense provides the jury with a "third option" and gives the defendant the benefit of the reasonable doubt standard. As the Ninth Circuit emphasized, "it makes no sense to confine our discovery of lesser included offenses to the barren words of the criminal code, uninformed by the evidence introduced at trial. It is, after all, that evidence which would convince the jury the defendant was guilty of some offense ***." *United States v. Johnson* (9th Cir. 1980), 637 F.2d 1224, 1238.

In the case at bar, the crime of theft has an inherent relationship with the crime of residential burglary. Residential burglary requires an entry into a dwelling of another with the intent to commit a felony or theft therein. (Ill. Rev. Stat. 1981, ch. 38, par. 19—3.) Although the crime of burglary protects interests that are broader than an owner's interest in his personal property, it does protect that interest as well. Similarly, the offense of theft protects an owner's interest in his personal property. Moreover, there is a plethora of cases in which the State has utilized the presence of personal property in a dwelling or a defendant's possession of stolen property to prove the requisite intent for burglary. In the very case at bar, the State introduced evidence of the items removed from the home and of the defendant's attempt to sell those items in order to prove he burglarized the house. The interests protected by the two criminal offenses are closely related, and the proof of the theft constituted proof of an

element of the burglary. Therefore, the trial court should have granted the defendant's request for an instruction on theft. On remand, the court should give the proposed instruction to the jury.

■■■ The defendant next contends that he was denied a fair trial when the prosecutor improperly placed evidence of prior criminal conduct before the jury. The trial court had granted the defendant's motion *in limine* to exclude evidence of his prior juvenile record. During trial the prosecutor questioned Ray Armstrong and developed the fact that the defendant's uncle was with Armstrong at the time the defendant and his accomplices attempted to sell the stolen items. This exchange took place:

"Prosecutor: Could you describe his Uncle Gregg?

Defense Counsel: Objection, it's irrelevant.

Court: Objection is overruled.

Prosecutor: Describe him, please.

Armstrong: About 5-7, 5-8, maybe 5-9. And he weighs about 160 or 170 pounds.

Prosecutor: Approximately how old is he?

Armstrong: 19, 19 or 20.

Prosecutor: Do you know of your own knowledge whether he's ever gotten [*sic*] mad at Clarence for getting into trouble?

Defense Counsel: Objection.

Court: The objection is overruled.

Armstrong: I don't know, but he just said that if Clarence ever got in any more trouble that he was going to beat him.

Prosecutor: Nothing further, Judge."

Defense counsel moved for a mistrial, which the trial court denied. The court also ruled that the motion *in limine* had not been violated, but struck the entire redirect examination and instructed the jury to disregard it.

The defendant correctly notes that testimony can prejudicially and improperly inform the jury of other crimes, even if that testimony does not specify the charges or misconduct. (See, *e.g., People v. Goodwin* (1979), 69 Ill. App. 3d 347, 349, 387 N.E.2d 433 (police officer's testimony that, upon arrest, defendant asked him to release him because " ' * * *he did not want to go back to prison * * *' "); *People v. Hudson* (1972), 7 Ill. App. 3d 333, 287 N.E.2d 297 (testimony that defendant's fingerprints were on file with the Illinois Bureau of Investigation).) The State counters that the defense counsel's cross-examination, in which Armstrong stated that the defendant did not want to speak in front of his uncle, invited the State to pursue the matter further.

■■■ Our review of the record indicates that the defendant did not invite this line of inquiry. Although Armstrong stated under cross-examination that the defendant did not want to speak in front of his uncle, it was the prosecutor who began his inquiry by suggesting the defendant had been in trouble. This implied that the defendant had previously engaged in some unspecified criminal conduct. Certainly, the insinuation is as strong as that in *Hudson.* (See also *People v. Harges* (1967), 87 Ill. App. 2d 376, 231 N.E.2d 650 (prosecutor's question to defendant as to whether he had ever seen police station before held reversible error).) In view of our disposition of this case we do not need to consider whether this comment was so prejudicial that it requires reversal of the conviction. It is sufficient to hold that it was error and it should not be repeated at the defendant's new trial.

Finally, the defendant argues the prosecutor committed prejudicial error when he repeatedly asked Carpenter if he was afraid of testifying against the defendant or if he ever said he was afraid of testifying. The State claims the prosecutor was merely inquiring into possible out-of-court communications between the witness and the attorneys. The State has not explained the need for this inquiry nor has it produced evidence of Carpenter's fears or threats against him. This line of interrogation can, as the defendant contends, imply that the defendant has made threats against the witness. The record, however, reveals that such an implication would be groundless. Absent some demonstrated legitimate justification for these inquiries, the State should abandon this line of questioning at the new trial.

For these reasons, the judgment of the circuit court of Will County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SCOTT and HEIPLE, JJ., concur.