THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK MEHELIC, Defendant-Appellant.

Fifth District No. 5—84—0628

Opinion filed February 23, 1987.

James E. Wallis, of Gitchoff, Wallis & Becker, of Granite City, for appellant.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Susan M. Young, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Frank Mehelic, was found guilty of one count of official misconduct (Ill. Rev. Stat. 1981, ch. 38, par. 33—3(c)) by a jury in the circuit court of Madison County. He was sentenced to two years' probation and was ordered to pay a fine of $500 and to perform 200 hours of public service. Defendant appeals. The facts are as follows.

On July 2, 1984, a third amended information was filed, charging defendant with five separate counts of official misconduct based upon incidents occurring between April 1981 and December 1982. Count I of the information charged that defendant, as Nameoki Township Highway Commissioner, committed official misconduct by directing township employees to repair his personal automobile in the township garage during working hours, thereby obtaining a personal advantage for himself. After the charges were severed, defendant went to trial on count I. The following evidence was adduced at trial.

Harold Ray Denson testified that defendant hired him as township mechanic on January 5, 1981. During June 1981, defendant ordered

Denson to work on defendant's two-tone, brown-on-brown 1979 Chevrolet Impala automobile in the township garage during working hours. When Denson questioned the propriety of this order, defendant told Denson that "[defendant] was the dictator, [defendant] was the supervisor, [defendant] was the Highway Commissioner [*sic*], and if [Denson] wouldn't do it [defendant] would find someone out on the street that would." Denson complied with the alleged order and stated that he spent 16 hours of township time working on defendant's automobile. According to Denson, he purchased a battery, valve seals, valve covers, and gaskets for defendant's automobile with township funds; however, evidence of these alleged purchases was not documented. Since Denson did not have the tools to perform the needed repairs, he made an appointment at the Nameoki garage so the repairs could be made.

In March 1983, Denson was subpoenaed to testify before the Madison County grand jury concerning defendant's activities. Denson was granted immunity from prosecution prior to testifying. According to Denson, defendant told him to either "take the Fifth [amendment] or to say I don't remember." After Denson testified, defendant allegedly told him "[t]he heads is going to roll now." Denson's job was eliminated on September 30, 1983. Denson, who was under union protection, filed a grievance against defendant seeking reinstatement. On the date he testified, Denson had not yet been reinstated.

At trial, Harold Ray Denson's wife, Shirley, testified that defendant told her that "heads were going to roll" after she testified before the grand jury. Her job as dispatcher for the township highway department was also eliminated on September 30, 1983. She testified that she saw her husband working on a tan-colored car in the township garage during the spring or summer of 1981.

Highway department employee JoAnn Hargrove testified that during the spring of 1981 she saw a light-colored personal car in the township garage. When Hargrove asked defendant why he was terminating the Densons' employment, defendant allegedly told her "[t]hem people tried to put me in jail. I can't help but get rid of them."

Several other highway department employees testified that in the spring or summer of 1981 they saw Mr. Denson working on a two-tone brown Chevrolet automobile in the township garage during working hours. They testified that they believed this automobile belonged to defendant and that it was not a township vehicle. Although Denson had earlier testified that several of these employees were present when defendant "directed" Mr. Denson to repair defendant's personal automobile, none of these witnesses could remember defendant giving

Mr. Denson such directions. The testimony of these witnesses conflicted as to how long defendant's automobile was worked on by Denson in the township garage.

Melba Mehelic, the defendant's wife, testified that during June 1981 she became interested in purchasing a 1979 Chevrolet Impala automobile from a local dealership and that since she knew very little about the mechanical aspects of motor vehicles, she asked defendant to have Mr. Denson inspect it. Denson met Mrs. Mehelic at the dealership on a working day at approximately 5 p.m. Denson checked the vehicle's mechanical condition, drove the vehicle for a short time, returned to the dealership and told Mrs. Mehelic "[i]f you don't buy it, I will." Mrs. Mehelic bought the automobile on June 16, 1981.

After driving the automobile to and from work for two days, Mrs. Mehelic noticed that the automobile was using oil. Each evening thereafter she added oil. Defendant told her that he would take the automobile to work so that Mr. Denson could look at it. Defendant did so on June 22, 1981. Mrs. Mehelic stated that she picked up the automobile on the evening of June 23, 1981, from the Nameoki garage. She paid a bill of $87.05 for replacement of valve cover gaskets, valve seals, and spark plugs at this time. Since the repairs failed to correct the problem, the Mehelics traded this vehicle in on a new one.

The defendant testified that before his wife bought the automobile in question, she asked him if he could ask Denson to inspect it. Defendant did so. After his wife bought the automobile, the Mehelics noticed that it was using a large amount of oil. When defendant mentioned this to Mr. Denson, Denson allegedly replied, "bring it on Monday and I'll take a look at it."

At approximately 9 o'clock Monday morning defendant took his wife's automobile to the township garage. After Mr. Denson inspected the automobile for approximately 45 minutes, he told defendant that it appeared to need engine repairs. Defendant then asked Denson where these repairs could be made. Denson told him the Nameoki garage. Defendant took the car to the Nameoki garage the following morning and repairs were made. The Mehelics retrieved the automobile that evening. They paid for the repairs at this time. The defendant admitted that it would have been in excess of his lawful authority as highway commissioner to order Mr. Denson to perform "maintenance work" upon his personal automobile in the township garage during working hours.

An invoice from the Nameoki Village Auto Center was admitted into evidence. This invoice, which was dated June 23, 1981, charged the Mehelics $66 labor to install valve cover gaskets, valve seals, and

spark plugs, $20 for the spark plugs, and $1.05 tax, for a total bill of $87.05. The invoice was stamped "paid" and was initialed and dated June 24, 1981.

The defendant raises five issues on appeal: (1) the information failed to charge a criminal offense; (2) the defendant was not proved guilty beyond a reasonable doubt; (3) the jury was not properly instructed; (4) it was reversible error to deny defendant discovery of Harold Ray Denson's mental health history and to deny defendant the opportunity to question Denson as to his mental health history at trial; and (5) it was reversible error to deny defendant discovery of Harold Ray Denson's income tax and business records and to deny defendant the opportunity to question Denson as to his automobile repair and sales activities while employed as township mechanic.

Count I of the information filed against defendant alleged that between April 1981 and December 1982 the defendant committed:

"OFFICIAL MISCONDUCT in that the said defendant, being a public officer, Nameoki Township Highway Commissioner, while acting in his official capacity, with the intent to obtain personal advantage for himself, he performed an act in excess of his lawful authority, as defined by Illinois Revised Statutes, Chapter 121, Sections 6—112, 6—118, and 6—201 through 6—201.18, in that he directed township employees, while employed by Nameoki Township, and during regular working hours, to perform maintenance work on the defendant's personal car, thereby obtaining personal pecuniary benefit for himself, said acts being in excess of his lawful authority as defined in previously cited statutes, in violation of Section 33—3(c), Chapter 38, Illinois Revised Statutes; ***."

Defendant alleges that the above information is deficient because: (1) it does not define "maintenance work"; (2) it does not state what is meant by "obtaining pecuniary gain for himself"; (3) it does not allege that defendant knowingly performed conduct in excess of his lawful authority; and (4) it does not allege a specific physical act which defendant performed to facilitate the offense.

■ ■ In order to withstand a pretrial motion or a motion in arrest of judgment, a charging instrument must be in substantial compliance with section 111—3 of the Code of Criminal Procedure of 1963. (*People v. Smith* (1984), 99 Ill. 2d 467, 471, 459 N.E.2d 1357, 1359; see also *People v. Jeffrey* (1981), 94 Ill. App. 3d 455, 463, 418 N.E.2d 880, 886-89.) A charging instrument substantially complies with the requirements of section 111—3 if it gives notice of the elements of the charge and particularizes it sufficiently with allegations

of the essential facts to enable the accused to prepare a defense which, if successful, would bar further prosecution for the same offense. (*People v. Smith* (1984), 99 Ill. 2d 467, 471, 459 N.E.2d 1357, 1359.) Section 111—3 provides in pertinent part:

> "(a) A charge shall be in writing and allege the commission of an offense by:
>
> * * *
>
> (3) Setting forth the nature and elements of the offense charged." Ill. Rev. Stat. 1983, ch. 38, par. 111—3(a).

■ To prove the offense of official misconduct under section 33—3(c), the State must establish that the defendant, a public officer or employee, while in his official capacity, exceeds his lawful authority by performing an act with the intent to obtain a personal advantage for himself or another. (Ill. Rev. Stat. 1981, ch. 38, par. 33—3(c)); *People v. Samel* (1983), 115 Ill. App. 3d 905, 908-09, 451 N.E.2d 892, 895.) The instant information alleged that: (1) defendant was Nameoki Township Highway Commissioner; (2) while he was in this capacity he "directed" township employees to perform "maintenance work" on his personal automobile; (3) such a directive was in excess of his lawful authority as defined by statute; and (4) this directive was given by defendant with the intent to obtain a personal advantage.

■ We find that the instant information substantially complies with section 111—3. Neither "maintenance work" nor "obtaining pecuniary benefit for himself" was required to be defined specifically to apprise the defendant of the nature of the charge against him. While the information does not precisely state what is meant by "obtaining pecuniary benefit for himself," one reasonably can surmise from the information's language that the "pecuniary benefit" defendant allegedly sought to obtain was the performance of "maintenance work" upon his personal automobile without charge. Although the charge did not particularize the exact type of "maintenance work" defendant allegedly directed Denson to perform, defendant pursued the proper remedy to this problem by seeking and obtaining a bill of particulars pursuant to section 111—6 of the Code of Criminal Procedure of 1963. Ill. Rev. Stat. 1981, ch. 38, par. 111—6.

Although the term "lawful authority" derives its meaning from a set of rules not contained in the official-misconduct statute, the phrase "in excess of his lawful authority" is sufficiently definite to enable public officials and their employees to determine the propriety of their actions. (*People v. Samel* (1983), 115 Ill. App. 3d 905, 909, 451 N.E.2d 892, 895.) Since public officials and their employees are held to know the scope of their "lawful authority," an information charg-

ing official misconduct need not state that the alleged acts in excess thereof were "knowingly" performed.

A "voluntary act" is a material element of every criminal offense. (Ill. Rev. Stat. 1981, ch. 38, par. 4—1.) While we agree with defendant's assertion that a voluntary act must be limited to voluntary physical movements on the part of defendant to accomplish the criminal objective (see Ill. Ann. Stat. ch. 38, par. 4—1, Committee Comments, at 250 (Smith-Hurd 1972)), the allegation that defendant "directed" township employees to perform illicit "maintenance work" necessarily implies a voluntary physical act by defendant to accomplish the criminal objective.

■ The defendant's second contention is that the evidence was insufficient to prove him guilty of official misconduct beyond a reasonable doubt. Specifically, defendant alleges that: (1) the oral directions defendant allegedly gave to Harold Ray Denson are not sufficient to constitute a voluntary physical act, (2) the only evidence that defendant made these alleged statements was elicited through Harold Ray Denson's testimony, (3) the fact that Harold Ray Denson was an employee of the township highway department rather than a township employee as was charged in the information creates a fatal variance between the allegations and the proof submitted at trial, and (4) the jury was not given the text of the scope of duties of a highway commissioner as set forth by statute; consequently, the jury could not determine whether defendant exceeded the scope of his lawful authority.

It is well established that spoken words can constitute the voluntary physical act required for the commission of a crime. (LaFave and Scott, Criminal Law 178 (1972).) The defendant's assertion that his alleged oral directions could not fulfill the voluntary-physical-act requirement is thus without merit.

The testimony of a single witness, if positive and credible, is sufficient to sustain a conviction even though the testimony is contradicted by the accused. (*People v. Martin* (1983), 112 Ill. App. 3d 486, 500, 445 N.E.2d 795, 807.) In the instant case the only person who testified to hearing the alleged oral directions of defendant was Harold Ray Denson. Nevertheless, numerous township employees observed defendant's personal automobile in the township garage being worked on by Denson during working hours. Furthermore, there was evidence showing that the employment of Denson and his wife was terminated at the behest of defendant after Denson testified before the grand jury concerning defendant's activities. Viewing this evidence under the applicable law, in the light most favorable to the prosecutor (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d

267, 277), we find that a rational trier of fact could have found defendant guilty beyond a reasonable doubt.

An error predicated upon a variance between allegations in a charging instrument and the proof at trial cannot be raised for the first time on appeal. (*People v. Tucker* (1976), 35 Ill. App. 3d 630, 633, 342 N.E.2d 395, 397.) Since variance was not argued in the trial court, such issue is therefore waived.

The defendant testified as follows during cross-examination:

"Q. Okay. So if Ray Denson worked on those cars, on your car during Township time, you wouldn't have been able to tell him to do that?

A. No.

Q. That would not be within your authority?

A. No."

Although the jury was not given the scope of duties of a highway commissioner as defined by statute, the defendant admitted that ordering a township employee to work on his personal automobile during township working hours would be in excess of his lawful authority as highway commissioner. Since he admitted that the behavior for which he was accused would be in excess of his lawful authority, it was unnecessary for the jury to be informed of the scope of defendant's duties as defined by statute.

■ The defendant's third contention is that the jury was not properly instructed. Specifically, defendant contends that: (1) certain instructions pertaining to elements of the offense of official misconduct should not have been given because these elements were not proved; and (2) certain instructions which allegedly would have enlightened the jury were refused, thereby creating confusion among the jurors.

As stated previously, official misconduct under section 33—3(c) is established by showing that the defendant, a public officer or employee, while in his official capacity, exceeds his lawful authority by acting with the intent to obtain a personal advantage for himself or another. Consequently, the defendant's arguments concerning the deletion of the alleged elements of "personal pecuniary benefit" and "detriment to the public good" from the instructions are without merit because they are not required to be proved to sustain a conviction for official misconduct under section 33—3(c).

People's instruction No. 2 stated:

"You are the sole judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into

account his ability and opportunity to observe, his age, his memory, his manner while testifying, any [sic] interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case.

You should judge the testimony of the defendant in the same manner as you judge the testimony of any other witness." (Illinois Pattern Jury Instruction, Criminal, No. 1.02 (2d ed. 1981) (hereinafter cited as IPI Criminal 2d).)

The defendant contends that this instruction should not have been given to the jury because it failed to include the element of time between the commission of the alleged offense and the confrontation between defendant and his accuser as required under the rationale of *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, and *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.

Under the reasoning of *Manson* and *Manion*, a jury may be instructed that the time between the commission of the alleged offense and the confrontation between the defendant and his accuser is a factor to be considered in determining whether an identification is reliable after a suggestive identification procedure has taken place. (IPI Criminal 2d, No. 1.02, Committee Comments, at 6.) Since a suggestive identification procedure is not in issue in the case at bar, the giving of this instruction without the elements suggested by defendant was not error.

The defendant further objects without argument or citation to authority to jury instructions it sought but which were refused. We decline to consider issues raised in such fashion. See *People v. Deacon* (1985), 130 Ill. App. 3d 280, 294, 473 N.E.2d 1354, 1364.

■ The defendant's fourth contention is that he should have been allowed access to Harold Ray Denson's mental health records during discovery and that he should have been allowed to elicit testimony from Denson during trial concerning Denson's mental health. Defendant claims that the trial court's failure to allow him to do so deprived him of his sixth amendment constitutional right to confront his accuser. Although defendant was denied the opportunity to discover specific information concerning Denson's mental health, the record indicates that Denson received professional care for a depressive neurosis "secondary to problems at work" beginning on or about August 22, 1983, and extending at least through the elimination of Denson's job as township mechanic on September 30, 1983.

It is well established that the mental health history of a witness is relevant to his credibility and is a permissible area of impeachment.

*(People v. Dace* (1983), 114 Ill. App. 3d 908, 913, 449 N.E.2d 1031, 1034, *aff'd* (1984), 104 Ill. 2d 96, 470 N.E.2d 993; see also *People v. Friesland* (1985), 130 Ill. App. 3d 595, 596, 474 N.E.2d 865, 866, *aff'd* (1985), 109 Ill. 2d 369, 488 N.E.2d 261.) A thorough examination of a witness' credibility is especially important when that testimony would be determinative of defendant's guilt or innocence. *(People v. Dace* (1983), 114 Ill. App. 3d 908, 913, 449 N.E.2d 1031, 1034.) It has been held that a neurotic condition may materially affect the accuracy of a witness's testimony. *People v. Phipps* (1981), 98 Ill. App. 3d 413, 416, 424 N.E.2d 727, 729-30.

■ It is not disputed that a defendant must establish the pertinence of a witness's mental health history to the credibility of his testimony before such evidence may be subpoenaed, discovered, or admitted at trial *(People v. Walton* (1982), 107 Ill. App. 3d 698, 703, 437 N.E.2d 1273, 1277); however, defendant urges that he is not required to demonstrate the relevance and materiality of information to which he has no access *(People v. Dace* (1983), 114 Ill. App. 3d 908, 915, 449 N.E.2d 1031, 1035). Defendant further contends that since a neurosis may materially affect a witness's credibility, and since defendant demonstrated that Denson suffered from a depressive neurosis caused at least in part by employment during which he allegedly performed illicit automobile maintenance work for defendant, the pertinence of Denson's mental health history was established sufficiently so as to enable defendant to discover specific details of Denson's neurosis.

The case at bar is very similar to *People v. Walton* (1982), 107 Ill. App. 3d 698, 437 N.E.2d 1273, in which a witness experienced a relatively minor mental health problem which preexisted the alleged offense. In the instant case, Denson's mental health problem was also minor, but it did not predate the occurrence which is the basis of the charges against defendant. In fact, before he is alleged to have received any treatment for any mental condition, Denson had already given testimony before the grand jury concerning defendant's alleged misconduct. There is no allegation that Denson's grand jury testimony and his testimony at trial vary in any degree.

■ Evidence that defendant directed Denson to perform illicit maintenance work on defendant's personal automobile did not come solely from Denson's own testimony. It is corroborated by the testimony of other employees who saw Denson working on defendant's automobile during normal work hours. Therefore, we conclude that the denial of defendant's attempt to discover Denson's mental health history did not prejudice defendant's sixth amendment right to confront his accuser. (See *People v. Friesland* (1985), 130 Ill. App. 3d 595, 596-

854

97, 474 N.E.2d 865, 866.) Consequently, defendant's conviction for official misconduct is not subject to reversal because defendant was not permitted to discover Denson's medical records.

 The fifth and final issue raised by defendant is that the trial court erred in refusing to allow defendant to inquire into Denson's alleged automobile repair and sales activities while employed as township mechanic. We conclude that defendant has waived his right to examine Denson as to these activities by acquiescing in the trial court's ruling on the State's motion *in limine*. In this ruling the court indicated that it would allow such examinations if evidence was introduced concerning occasions when Denson worked on vehicles in the township garage without specifically identifying the owners of such vehicles. No such evidence was introduced. The only nontownship vehicles the witnesses identified as having been worked on by Denson were defendant's; therefore, evidence of any automobile repair and sales activities allegedly engaged in by Denson was irrelevant.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KARNS, P.J., and JONES, J., concur.