THIRD DIVISION
December 31, 2008

No. 1-07-0395

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Petitioner-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| K.S., a Minor, | ) | Honorable |
| | ) | Noreen Daly, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE QUINN delivered the opinion of the court:

Respondent, K.S., a 12-year-old boy, was adjudicated delinquent based upon a finding that he had committed the offense of aggravated criminal sexual abuse (720 ILCS 5/12-16 (c)(2)(i) (West 2006)). Specifically, the circuit court found that the State had proven K.S. guilty of knowingly inserting his penis into the mouth of V.W., who was under nine years of age when the act was committed, for the purpose of sexual arousal or gratification. K.S. was declared a ward of the court and sentenced to a term of five years' probation with electronic monitoring and juvenile sex offender treatment. The circuit court admonished K.S. that he was classified as a "sexual predator" and would be required to register under the Illinois Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2006)) and K.S. signed and initialed the SORA

notification form. On appeal, K.S. contends that: (1) the circuit court violated his due process rights by refusing to conduct an *in camera* review of the school records for the three State witnesses, C.K., P.T., and Q.T.; (2) section 5-101(3) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-101(3) (West 2006)) is unconstitutional because it denied K.S. the right to a jury trial; and (3) this court should remand K.S.'s case so that he can be properly admonished regarding section 3-5 (730 ILCS 150/3-5(West Supp. 2007)), a new provision to SORA, which allows a juvenile the opportunity to petition for termination of his registration as a sex offender after five years of registration. For the following reasons, we remand this case for the circuit court to conduct an *in camera* review of the school records in question.

Prior to trial, K.S. sent subpoenas to the Buckingham School, where K.S., C.K., P.T., and Q.T. had been students, and the Chicago Board of Education requesting all incident reports, Individualized Education Programs (I.E.P.'s), statements, psychological reports and disciplinary reports involving C.K., P.T., and Q.T. The Chicago Board of Education responded that it would not release the records without a court order or written release from either the students or their parents/guardians. K.S. then filed a motion for a court order directing the Chicago Board of Education to release any and all I.E.P.'s, psychological reports, statements, incident reports, and disciplinary records involving C.K., P.T., and Q.T. In his motion, K.S. argued that because the three witnesses attended a therapeutic day school, it was reasonable to assume that they had mental or cognitive impairments. In response, the State asserted that the records were privileged under the Illinois School Student Records Act (105 ILCS 10/1 et seq. (West 2006)) and that K.S. had not shown that the records contained any material or relevant information. The State argued

that the mere fact that the three witnesses attended a therapeutic school did not show that they were incompetent to testify.

The circuit court suggested that a competency hearing should be scheduled to enable the court to observe and examine the witnesses' demeanor and how they responded to questions. In his reply motion, K.S. argued that a competency hearing would be futile if he did not have the opportunity to first review the witnesses' school records. K.S. asserted that he was requesting the records to examine the possibility of competency and to prepare for cross-examination of the witnesses. Citing his right to cross-examine and impeach the witnesses against him, K.S. requested that the records be turned over to his counsel or to the court for an *in camera* examination. K.S. explained that he was requesting an *in camera* inspection because he did not know what the records would contain.

The circuit court denied K.S.'s request to order the release of the records. In response to K.S.'s argument that the records could contain exculpatory evidence, the circuit court found that it "could not at all find that there could ever be exculpatory evidence in the witnesses' prior education files" and that "there [was] nothing raised from a factual standpoint in [K.S.'s] motion that would cause me at this point to [allow] a fishing expedition into those young kids' education files." The circuit court offered to conduct a competency hearing for the witnesses, but K.S. declined and stated that he needed access to the records in question prior to any competency hearing.

At trial, the evidence established that K.S. and the State's witnesses, C.K.[1], P.T. and Q.T.,

---

[1] This State witness's name is spelled multiple ways in the record. K.S. uses "C.K.," while

1-07-0395

all attended Buckingham School, a therapeutic day school. On May 31, 2005, the four boys left the school without permission. The evidence showed that on that date, at about 1 p.m., V.W., a five-year-old girl, was playing in her backyard on the South Side of Chicago, Illinois. The yard was surrounded by a fence and the gate leading to the yard was held closed by a wooden stick. V.W. was playing in her backyard alone when she heard a knock at the gate. Someone removed the stick from the gate, and the four boys approached V.W. K.S. told V.W. to follow him. V.W. and K.S. walked into the alley, with the other boys following behind. K.S. told V.W., "If you do this for me, I'll give you some money." K.S. then lowered his pants and placed his penis into V.W.'s mouth, who was squatting in front of him. V.W. ran home and told her mother what had happened. C.K., P.T. and Q.T. testified against K.S. at the adjudicatory hearing, after which the circuit court found K.S. to be delinquent based on a finding that he had committed the offense of aggravated criminal sexual abuse.

On appeal, K.S. first contends that his due process rights were violated where the circuit court denied his request to conduct an *in camera* review of the school records involving C.K., P.T. and Q.T. K.S. maintains that he needed these documents to decide whether to challenge the witnesses' competency and to prepare for cross-examination to question their ability to observe and recollect the event and to impeach them with information to show their bias or motive to lie. K.S. asserts that the records contained potentially material information where all three boys attended Buckingham School, which enrolled students with behavioral and mental problems. K.S.

the State uses "K.K." There is no dispute that the parties are referring to the same individual, and we will use "C.K." throughout this opinion for consistency.

-4-

1-07-0395

also notes that, following the incident in question, C.K. was placed into a psychiatric facility for three weeks.

A trial court's decision on whether to limit discovery is reviewed for an abuse of discretion. People v. Williams, 209 Ill. 2d 227, 234 (2004). However, this court reviews *de novo* whether a defendant was denied due process and, if so, whether that denial was prejudicial. See People v. Oliver, 368 Ill. App. 3d 690, 695 (2006), citing People v. Mattis, 367 Ill. App. 3d 432, 435-36 (2006) ("because the essential facts concerning what happened at the grand jury proceedings are undisputed, we review *de novo* whether defendant suffered a prejudicial denial of due process").

Section 6 of the Illinois School Student Records Act provides, in pertinent part, as follows:

"(a) No school student records or information contained therein may be released, transferred, disclosed or otherwise disseminated, except as follows:

***

(5) Pursuant to a court order, provided that the parent shall be given prompt written notice upon receipt of such order ***." 105 ILCS 10/6(a)(5) (West 2006).

K.S. acknowledges the witnesses' privacy interests under the Illinois School Student Records Act, but argues that these interests are overcome by K.S.'s right to utilize potentially material information contained in the witnesses' school records. K.S. maintains that the circuit court should have conducted an *in camera* hearing to determine whether the school records contained

information relevant to the witnesses' competency to testify.

Illinois courts have held that evidence of a witness's mental condition is admissible to the extent that it bears on the credibility of the witness's testimony, and is thus a permissible area of impeachment. People v. Plummer, 318 Ill. App. 3d 268, 279 (2000). However, before such evidence may be introduced, its relevance must be established. Plummer, 318 Ill. App. 3d at 279. A two-step procedure for discovery of mental health records has been established. First, the defendant must sufficiently show that the requested records are material and relevant to the witness's credibility. People v. McMillan, 239 Ill. App. 3d 467, 487 (1993). If that is done, the discovery is permissible. However, if the witness or therapist asserts his statutory privilege, then an *in camera* hearing is held on this question. McMillan, 239 Ill. App. 3d at 487.

In People v. Bean, 137 Ill. 2d 65 (1990), our supreme court approved the procedure whereby the trial court conducted an *in camera* inspection of the witness's mental health records to determine whether they contained relevant information that could be used to impeach the witness. Bean, 137 Ill. 2d at 99-100. While the records in Bean were privileged under the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1979, ch. 9½, par. 801 et seq.) the court held that such privilege must give way to a defendant's sixth and fourteenth amendment rights but only to the extent that a trial court determined the privileged information to be relevant and impeaching. Bean, 137 Ill. 2d at 100. Just as a trial judge may limit cross-examination to prevent inquiries that are irrelevant, repetitive, or too time-consuming, that harass a witness, or that threaten to distract a jury from the actual issues by unduly emphasizing details of the witness's life, the judge may also limit a defendant's access to statutorily privileged

information. Bean, 137 Ill. 2d at 100-01. In Bean, our supreme court held that the defendant was not denied his sixth amendment rights of confrontation and cross-examination by the trial court's refusal to order disclosure of a witness's mental health records following an *in camera* review of the records. Bean, 137 Ill. 2d at 99-100.

In People v. Phipps, 98 Ill. App. 3d 413 (1981), this court held that the circuit court did not abuse its discretion in permitting the disclosure of the witnesses' psychiatric records, where the witnesses suffered from psychiatric disorders so severe that they were long-term residents of a mental hospital and they were institutionalized at the time of the alleged offenses and at the time of trial. Phipps, 98 Ill. App. 3d at 414-15. This court stated:

> "When, as in the instant case, a statutory evidentiary privilege comes in direct conflict with a defendant's constitutional rights of confrontation and due process, we hold that the former must give way so that the fundamental protections of our criminal justice system will not be abrogated." Phipps, 98 Ill. App. 3d at 417.

This court subsequently narrowed the holding in Phipps, in People v. Walton, 107 Ill. App. 3d 698, 703 (1982). In Walton this court stated:

> "We do not deem the rule of Phipps to be so broad as to negate the necessity of establishing the pertinence of a witness' psychiatric condition or history to the credibility of his or her testimony before such evidence may be introduced or before a witness' otherwise confidential mental health records may be subpoenaed or discovered." Walton, 107 Ill. App. 3d at 703.

This court again considered balancing a defendant's sixth and fourteenth amendment rights with a witness's right to confidentiality of his mental health records in People v. Dace, 114 Ill. App. 3d 908 (1983). In Dace, the State's chief witness had been involuntarily committed to a mental health center less than two years before the offenses occurred. Dace, 114 Ill. App. 3d at 915. In an *in camera* conference, the trial court reviewed the witness's file and ruled that the records were privileged and too old to be relevant, and barred the defendant from questioning the witness concerning her mental history. Dace, 114 Ill. App. 3d at 912. The appellate court stated that if the witness or therapist invokes the statutory privilege to refuse to disclose mental health records, "the trial court should hold an *in camera* hearing [in] the presence of prosecutors and defense counsel to determine which information is relevant or material to [the] impeachment of the witness." Dace, 114 Ill. App. 3d at 915. This court found that the trial court should have permitted the requested discovery where the witness's testimony was the only evidence of the defendant's participation in the alleged crime. This court stated that, "[c]onfronted with articulable evidence that raises a reasonable inquiry of a witness'[s] mental health history, a court should permit a defendant to discover that history." Dace, 114 Ill. App. 3d at 915. The court explained that a thorough examination of a witness's credibility is especially important when that testimony will be determinative of the defendant's guilt or innocence. Dace, 114 Ill. App. 3d at 913.

In People v. McMillan, 239 Ill. App. 3d 467, 488 (1993), this court held that the trial court's denial of the defendant's request for the production of psychiatric and psychological evaluations of the codefendant who testified for the State, without an *in camera* hearing, was not

reversible error where the bases defendant asserted for such production had been clearly presented to the jury. This court noted that codefendant admitted that he had problems with alcohol, as disclosed in the report, codefendant's mental capacity was evident from his testimony at trial, and codefendant was thoroughly cross-examined as to inconsistent statements he made to police. McMillan, 239 Ill. App. 3d at 488. However, this court emphasized the importance of conducting an *in camera* hearing in such cases by stating:

"While we strongly urge the circuit courts to conduct such inspections, and note the better procedure in this case would have been for the court to perform such an inspection of the report, since the three bases defendant asserts for divulging this report were clearly presented to the jury, the failure to conduct an *in camera* inspection was not reversible error." McMillan, 239 Ill. App. 3d at 488.

In this case, the circuit court should have conducted an *in camera* inspection of the school records in question. All three boys attended a therapeutic school and there was evidence that C.K. was placed into a psychiatric institution shortly after the incident. Further, the record supports K.S.'s assertion on appeal that school personnel interviewed C.K., P.T. and/or Q.T. regarding the incident. The testimony from the three boys was the only direct evidence of defendant's participation in the alleged crime. Therefore, a thorough examination of the witnesses' credibility was especially important where that testimony was determinative of the defendant's guilt or innocence. See Dace, 114 Ill. App. 3d at 913.

In light of our conclusion that the circuit court should have conducted an *in camera* review of the school records for the three State witnesses, we remand the cause for such hearing.

That necessarily means that we do not now reach the remaining pending issues in this opinion. See <u>People v. Davis</u>, No. 105092, slip op. At 17 (November 20, 2008). On remand, the circuit court shall articulate proper findings of fact and conclusions of law and shall file them with the clerk of this court within 60 days of the issuance of the mandate in this matter, accompanied by the record of the proceedings on remand. See <u>Davis</u>, slip op. at 17. After the proceedings on remand have been completed, this court will announce its judgment on any pending issues.

Cause remanded with directions.

MURPHY, P.J., and THEIS, J., concur.