JOAN DEL ROSARIO, Plaintiff-Appellee, v. ROBERT DEL ROSARIO, Defendant-Appellant.

(Nos. 53994, 54457 cons.;

First District—November 17, 1970.

*Opinion adhered to on rehearing March 1, 1971.*

Peter Bianco, Jr., of Chicago, (Stuart N. Litwin, of counsel,) for appellant.

Gomberg, Missner & Schaps, of Chicago, for appellee.

Mr. PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

The plaintiff filed a complaint for separate maintenance or, in the alternative, for divorce. She alleged that she had been a good and dutiful wife during their marriage and that since their separation she had been living without fault. Paragraph 7 of her complaint read as follows:

"More particularly, the Defendant has constantly harassed the Plaintiff and is wrongfully quarrelsome and abusive towards the Plaintiff. That the Defendant has on numerous occasions, struck the Plaintiff violent blows without cause or provocation, and particularly, on or about the 7th day of November, 1964, the Defendant did pound the Plaintiff against the wall and attempted to strangle her. Further on or about the 10th day of September, 1966, the Defendant beat the Plaintiff about the body and tore off her clothes; that he struck her head against the tile floor thereby necessitating the Plaintiff being taken to St. Joseph's Hospital in Elgin, Illinois requiring stitches about her face; and further on or about the 28th day of July, 1968, while leaving the home of a friend, the Defendant became enraged, and burned a cigarette into the chest of the Plaintiff."

Defendant's answer to paragraph 7 was: "Denies each and every allegation of Paragraph #7."

At the trial the defendant admitted that on November 7, 1964, he shook his wife, although he denied that there were bruises resulting. He stated that he was holding the front of her robe, shaking her "real hard," and lost his grip of her, causing her shoulder to go through the wall. The defendant admitted that on September 10, 1966, he struck his wife about the head and shoulders and tore off part of her clothing. He said, "I swatted her, that's right." He further stated that after the incident he took her to the hospital because she had a cut over her eye and "just bruises."

The defendant stated that on July 28, 1968, he burned his wife's chest with a cigarette; he termed this an accident. When asked, "You were holding a cigarette and she went up against the cigarette and burnt her chest, is that what she did?" he replied, "That's what happened."

The plaintiff testified that her husband was usually drunk two or three times a week; that at these times he became cruel and abusive. She testified in detail as to various incidents which occurred. She stated that on November 7, 1964, they went to bed after having washed floors all day; that she was tired and went to sleep; that "he didn't like that and threw me out of bed on the floor and I got up and went to the bathroom, put my robe on and went to the bathroom. He said that I was saving myself for some other man, he slapped me and I was all black and blue behind my ears." She added that the accusations were false, and that as a result of damage caused during the beating it was necessary to replace a section of wall and the top of the toilet tank .

She said that on September 10, 1966, Bob Parino, a friend who was living with them, came home and found her crying because the defen-

dant had kicked over the television set and pulled down the kitchen drapes while intoxicated. When Parino arrived the defendant started packing his clothes, saying he was going to leave with Parino, who had found a new place to live. While Parino was consoling the plaintiff, the defendant came back into the room and, according to the plaintiff, "grabbed hold of me, had me by the hair and kept bouncing me, you know, some of it is foggy. I had this brain concussion, and he hit me in the head, he must have slapped me with his hands, my whole body was black and blue." At the hospital she required six or seven stitches.

The plaintiff testified that on July 20, 1968, while they were visiting some friends, the defendant accused her of trying to have an affair with their friend, and grabbed her while holding a lighted cigarette. The questioning at the trial was as follows:

"Q. The cigarette was lit?
A. Yes.
Q. He was burning, placing the cigarette against your chest?
A. Yes.
Q. As a result of that, you still bear marks as a result of those burns?
A. Yes.

＊　＊　＊

Q. When he was burning you, what were you doing?
A. I was screaming and crying.
Q. And did you try to get away from him?
A. Yes.
Q. What did he do?
A. He kept holding on, he's strong, he held me."

She added that their friends finally pulled her away from him and that since that night she had not lived with her husband nor slept with him.

The defendant offered his version of the incidents by saying that he shook and beat his wife on September 7, 1964, because she refused to have sexual intercourse with him and went to sleep; that he became aggravated since she had also refused on numerous occasions. [The plaintiff had explained that she worked all day and was tired; that "he treated me so badly, I couldn't jump in bed with him and make love, no, I can't do this."]

Concerning the incident on September 10, 1966, the defendant said that after he left the house he decided there was no sense in his leaving, "so I came back and as I came around the house, I could see through the kitchen curtains, and she was holding onto his arm and kissing him up the arm and telling him he was something special." At this point the court overruled an objection that the testimony be stricken, and the

witness continued: "Then he was standing right next to her and she was sitting on a kitchen chair, he was standing right next to her. She reached under his crotch and pulled him to her and put her arms around and started kissing in front of him." The judge said: "I am going to let it stand. I think it is improper, but I'm going to let it stand." The defendant then said that he became violent when he saw this and that is why he struck his wife.

The defendant maintained that he did not intentionally burn his wife with a cigarette on July 28, 1968.

The court found for the plaintiff on her complaint for divorce, and the decree was entered on March 12, 1969, in which the court ordered defendant to pay plaintiff's attorney's fees. An appeal is taken from that decree.

After the defendant filed his notice of appeal, plaintiff filed a petition asking the court to direct defendant to pay her attorney's fees in defending the appeal. After a hearing the petition was granted, and an appeal has also been taken from that order.

The defendant argues that the trial court improperly refused to hear and consider evidence pertinent to the case, and asserts in particular that he was denied the opportunity of presenting evidence to show that his alleged acts of cruelty were provoked by plaintiff's improper conduct. His argument is based on the question of provocation. The plaintiff had asserted that on the three specified dates the defendant had engaged in unprovoked acts of cruelty. The defendant's answer to that was to deny "each and every allegation," and he now argues before this court that "in answering as he did he simply denied that the conduct complained of was unprovoked." He states further that his answer "neither denied nor admitted that he had committed the acts complained of nor was he required to do so under the structuring of the plaintiff's complaint."

We find this explanation unacceptable. The defendant's denial of "each and every allegation" must be taken as a denial that the acts occurred, and not merely that they were unprovoked. If the defendant sought to deny only that the acts were unprovoked he could have admitted that the physical acts did occur, then denied that they were unprovoked; this he did not do. At the trial the defendant readily admitted committing the acts, but attempted to defend by testifying that he had been provoked to commit two of them, and that the third was an accident.

There are two elements to that part of plaintiff's complaint in which she alleges the three instances of unprovoked brutality. One is the fact of their occurrence, and the other is that they were unprovoked. The defendant first denied that the acts occurred; from his general denial it could be expected that his defense would be that the allegations re-

garding the beatings were untrue; however he admitted them at the trial. He now argues that he was denying that no provocation existed for commission of the acts.

■■ Under the amended version of the Divorce Act (Ill. Rev. Stat. 1967, ch. 40, sec. 9 (a) ), it is now provided that in every action for divorce commenced after its effective date, "the fault or conduct of the plaintiff, unless raised by the pleadings, is not a bar to the action nor a proper basis for the refusal of a decree of divorce." The amendment became effective August 14, 1967, and this action was filed October 28, 1968. Defendant endeavors to convince this court that his general denial put in issue "the fault or conduct of the plaintiff." We reject this argument.

As we have pointed out, in his answer the defendant did not admit the beatings occurred but deny they were unprovoked; he denied each and every allegation of plaintiff's paragraph 7. He thereby denied that, provoked or unprovoked, he struck and burned his wife at all on the dates specified. If he wished to establish provocation as an issue, he should have followed the statutory requirement of section 9 (a) of the Divorce Act and admitted the acts, but raised the fault of plaintiff as a defense.

In *Stanard v. Stanard*, 108 Ill.App.2d 240, the plaintiff sought a divorce on the grounds of desertion and mental cruelty. Her action, however, was filed prior to the effective date of the amendment and it was thus her duty to both plead and prove lack of provocation. She failed to so plead, and at the trial she failed to establish lack of provocation. The court reversed the divorce decree because of those failures. In *Stanard* the complaint was filed before section 9(a) became effective; however, that section applies to the present case and requires the defendant to place in issue the plaintiff's fault. Although he failed to do so, both defendant and plaintiff did introduce evidence regarding their respective versions of what factors led to the defendant's violence.

■■ The defendant argues that the trial court did not appreciate that provocation was an issue and did not take that element into consideration. For the reasons already stated we also believe the issue of provocation was not properly raised by the defendant, but there nevertheless exists in the record evidence sufficient to establish lack of provocation.

The plaintiff testified that on November 7, 1964, she had been working hard all day; that her husband wished to have sexual relations with her that night, but she was tired and fell asleep. She further testified that her husband had been abusing her at the time and she could not just forget his behavior and have relations with him.

Regarding the evening of September 10, 1966, the plaintiff testified

that the defendant was drunk and packed his bags to leave after they had argued. She was being consoled by a friend when the defendant returned and beat his wife. According to the defendant's version, his wife was engaging in sexual improprieties with the friend, which caused the defendant to become enraged. The plaintiff denied this, saying she was crying because her husband had left, and that she was doing nothing improper.

Regarding the third incident, the plaintiff testified that the defendant had been drinking, and falsely accused her of having an affair with their host; that during the argument he burned her on the chest with his cigarette and had to be forcibly pulled away from her. His version was that the burning was an accident. If the judge believed the plaintiff's account of each of these instances he would have been justified in finding that the acts were unprovoked.

Paragraph 5 of plaintiff's complaint is as follows: "The Plaintiff has been living separate and apart from the Defendant as man and wife without any fault on her part since July 28, 1968." Defendant's answer to this paragraph reads: "Denies each and every allegation of Paragraph #5." Again the defendant seeks to clear himself by arguing that his denial formed an issue—this time on the defense of recrimination—and that therefore, the trial court should have heard his testimony on the matter.

At the trial, when defendant's counsel questioned him about January 31, 1969, an objection was sustained. Counsel said, "Isn't it part of that she says she was a good and faithful wife at all times, and she further testified that she's been living as a single woman since July, 1960, isn't that part of it." [Plaintiff had testified that she had been living as a single woman since July 1968.] Counsel continued: "I think we have a right to impeach that." The court said: "I'm sorry, but I don't agree with your thinking." After further discussion counsel said, "All right. I can't ask him any further questions." The witness was then excused.

■■ The defendant did not make an adequate offer of proof on that matter. (See *Chicago City Ry. Co. v. Carroll,* 206 Ill. 318, 328-329.) While the defendant had a witness on the stand at the time he did not ask him questions to elicit the information sought, nor did he indicate to the court what was expected to be proved by the witness. His assertion that he had witnesses to testify that the plaintiff was not a good and faithful wife is not sufficient to permit us to "judge the materiality of the evidence sought to be introduced. Without such preservation of evidence it is impossible for the court to determine the probative value of the proffered testimony. *In re Estate of Garner,* 8 Ill.App.2d 41, 130 N.E.2d 219." *LaSalle Nat. Bank & Wieboldt Stores, Inc.,* 102 Ill.App.2d 339, 346.

14

Before this court counsel urges that he should have been allowed to defend on the basis of recrimination because "the defendant did not have knowledge of the acts constituting the defense when he filed his answer." If that is true, the defendant was pleading in bad faith by denying plaintiff's assertion that she was living without fault since defendant's denial of that fact occurred at a time when by defendant's own admission he did not have knowledge of the acts.

In argument, the defendant says that even if the defense of recrimination was not properly raised, it should have been heard because the custody of a minor child was involved in the proceedings. The defendant did not present this argument to the trial court.

As a part of its decree the court awarded attorney's fees to the plaintiff. The court said that based on her income she could not afford her own attorney's fees. We think the fees awarded are reasonable. The defendant made no proper request for a hearing on attorney's fees. After the divorce decree was entered the plaintiff petitioned the court for an order directing defendant to pay her attorney's fees on appeal. We find the fees on the appeal to be reasonable.

For the reasons here stated the decree and the order are affirmed.

Decree and order affirmed.

LYONS and BURKE, JJ., concur.