THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE MONK, Defendant-Appellant.

Fourth District   No. 4—87—0791

Opinion filed September 14, 1988.—Rehearing denied October 18, 1988.

530

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Greg Roosevelt, State's Attorney, of Lincoln (Kenneth R. Boyle, Robert

J. Biderman, and David E. Mannchen, all of State's Attorneys Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

On September 18, 1987, defendant Jesse Monk was found guilty by the circuit court of Logan County of the offense of aggravated criminal sexual abuse in violation of section 12—16(c)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1)). Defendant was subsequently sentenced to four years' imprisonment in the Illinois Department of Corrections.

A bench trial was conducted on September 17, 1987. The first witness was T.M., the victim, who is currently seven years old. The incident occurred on November 25, 1986, at which time she was six years old. Defendant and his wife, Alma Monk, were baby-sitting for T.M. On the date in question, defendant picked T.M. up at school and had lunch. She stated he then touched her and kissed her on her privates. By use of a doll, she showed this meant her groin. She stated he also had her kiss his penis and wipe it with a Kleenex. This occurred in the bedroom, and defendant's wife was not present. Later that day T.M. told her parents and others.

On cross-examination, T.M. could not remember what clothing she wore. She also stated she was mad at defendant because defendant would not let her go to a neighbor's house. However, this occurred after defendant touched her. She maintained he took her clothes off. She also remembered telling the police defendant touched his private to her private and pushed hard. Defendant told T.M. she was his special friend.

T.M.'s father testified that defendant and his wife had been baby-sitting for his daughter for approximately one year. On the date in question, he picked T.M. up around 4 p.m. When they got home, T.M. started crying, saying she wanted her mother, but she would not tell him why. When her mother came in, T.M. told them what happened.

T.M.'s mother stated that when she got home, T.M. was very upset and started crying while telling her what happened. They then took T.M. to the hospital. Later that night, T.M. wet her bed, which was very unusual for her. She also had nightmares, which she did not have before.

Mary Stenger is a social worker at St. John's Hospital in Springfield. She interviewed T.M. that night. T.M. seemed to her to be alert and intelligent. She was able to relate the incident without any prompting.

Dr. John Benitez examined T.M. at the hospital. He testified T.M.

was alert, oriented, and playful at the time of the interview.

Sergeant John Cook is a detective with the Logan County sheriff's office. He interviewed T.M. late that night. She was very alert and communicative.

Diane Schneider is a forensic scientist specializing in serology. She tested the underwear T.M. was wearing that day and found saliva in the crotch. She was unable to find any blood factors in the saliva. Both T.M. and defendant are nonsecretors, meaning their saliva would not contain blood factors. The State rested.

Defendant stated he is 46 years old and was disabled in 1981. He and his wife had been baby-sitting T.M. in excess of one year. On the date in question, his wife needed to get some medication and asked defendant to pick T.M. up. He brought her home and gave her some lunch. She suddenly got up and started riding on the corner of his chair. He stated T.M. said, "Let's me and you go in the bedroom and do what mamma and daddy do and you and Alma do." He told her she should not talk this, and they went outside. At no time did he touch or kiss her improperly, or have her kiss him.

Once outside, he was working on a tiller. He had to continually yell at T.M. to keep her out of his neighbor's house. When his wife came home, he told her he had a problem with T.M. He explained that T.M. had a habit of sexually rubbing herself on the chair which they called "riding the chair."

Robert Fuiten considers defendant a friend. Defendant has a reputation for honesty and truthfulness. He also has a good reputation for moral character. Ed Schlosser testified similarly. Larry Wise stated defendant and his wife baby-sat his daughters. He similarly testified as to defendant's reputation. Everett and Jesse Edith Cherry, defendant's neighbors, also testified favorably concerning his reputation.

Alma Monk testified the first time she saw T.M. that day was when she got back from the pharmacy. Defendant brought T.M. into the house through the front door. He did this to make sure she was home because he was not going to bring T.M. in the house unless Alma was home. Alma gave T.M. her medicine to settle her down. Defendant told Alma that T.M. was having one of her bad days. To her this meant T.M. was frequently riding furniture. During the rest of the afternoon, T.M. played in the house like normal.

This was the first time defendant had been alone with T.M. Defendant did not tell Alma that T.M. had made the suggestive comment to him.

The court, after hearing closing arguments, found defendant guilty. On November 3, 1987, the court sentenced defendant to four

years' imprisonment. Defendant now appeals alleging (1) the court erred in denying defendant access to reports relating to psychological treatment and counseling T.M. received; (2) the court erred in quashing the subpoena defendant issued to T.M.'s school teacher; (3) defendant was not proved guilty beyond a reasonable doubt; (4) the court allowed improper evidence in the sentencing hearing; and (5) the sentence imposed is excessive. We affirm.

Prior to trial, defendant filed a motion to produce requesting that the State be ordered to produce any psychological, psychiatric, or other counseling reports concerning T.M. Discovery of these materials is covered by Supreme Court Rule 412(h), which provides:

> "Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court, in its discretion, may require disclosure to defense counsel of relevant material and information not covered by this rule." (107 Ill. 2d R. 412(h).)

At the hearing on the motion, Alma Monk testified T.M.'s mother told her that T.M. had been to a medical doctor and a psychiatrist. She also knew that T.M. was hyperactive and was taking Ritalin. The State indicated they had no such reports. The court ordered the State to procure whatever reports there were. The next day the court viewed two reports, one from a medical doctor and one from a psychologist, *in camera*, and determining that there was nothing material in them, denied defendant's motion. Defendant asserts this was error. We disagree.

Illinois courts have held that evidence of a witness' mental condition is admissible to the extent that it bears on the credibility of the witness' testimony. (*People v. Walton* (1982), 107 Ill. App. 3d 698, 703, 437 N.E.2d 1273, 1277; *People v. Phipps* (1981), 98 Ill. App. 3d 413, 416, 424 N.E.2d 727, 729-30.) In *Phipps*, this court first addressed the question of discovery of mental health records. There the crime occurred at a mental health facility, and a number of witnesses were patients. We determined that the court should issue subpoenas for the records of the witnesses and, if the therapist or patient asserted his statutory privilege, the record should be viewed *in camera* with counsel present, with only relevant and material parts being disclosed. After directing the subpoena should be issued, we stated:

> "In addition, the trial court should take specific note of the policy of this State in maintaining the confidentiality of these files and should conduct a further inquiry into the reasonableness and materiality of the requested material." *Phipps*, 98 Ill. App. 3d at 417-18, 424 N.E.2d at 730.

In *Walton*, this court further defined the procedure to be used. There, defendant, relying on *Phipps*, wished to discover medical and mental health records of the victim. We made clear that *Phipps* was not to be read too broadly, stating:

"We do not deem the rule of *Phipps* to be so broad as to negate the necessity of establishing the pertinence of a witness' psychiatric condition or history to the credibility of his or her testimony before such evidence may be introduced or before a witness' otherwise confidential mental health records may be subpoenaed or discovered." (*Walton*, 107 Ill. App. 3d at 703, 437 N.E.2d at 1277.)

We observed that in *Phipps* the witnesses suffered from severe psychiatric disorders requiring long-term hospitalization. They were residents at the time of the crime and trial. In contrast, in *Walton*, the witness had once been a voluntary patient and successfully completed treatment. He was not under treatment at the time of the crime or trial. Further, the only evidence offered to support defendant's position was the assertion that the victim was under supervision of medical authorities. We found that this fell far short of the type of evidence which would have been necessary to establish the relevancy of the records to the victim's credibility. Since defendant's showing of relevancy was insufficient, we held the court properly denied the motion.

█ These two cases establish that a two-step procedure for discovery of these records has been set up. First, defendant must sufficiently show that the requested records are material and relevant to the witness' credibility. If that is done, the discovery is permissible. However, if the witness or therapist asserts his statutory privilege, then an *in camera* hearing with counsel present is held on this question.

█ Under the facts of this present case, it is apparent that defendant did not make it past the first step. Defendant's sole evidence was the testimony of Alma Monk that T.M.'s mother told her that T.M. was seeing a doctor and Alma Monk's statement that T.M. was on medication for hyperactivity. This appears to be little more than the assertion in *Walton* that was found unacceptable. However, in the present case, the court took a further precautionary step by exercising its inherent authority in reviewing the documents *in camera*. It then determined they were not material or relevant.

Defendant, relying on *People v. Dace* (1983), 114 Ill. App. 3d 908, 449 N.E.2d 1031, asserts this procedure is improper. The *Dace* court relied on our decision in *Phipps* but disregarded that of *Walton*. In *Dace*, the witness had been involuntarily committed to a mental health facility. Defendant wished to see those records. The court reviewed the

court file *in camera* and found the records irrelevant. The appellate court reversed. It first found the requirement that the defendant prove the materiality and relevance of the records in question put defendant in a situation where he would have to prove the reports relevant when he did not know their contents. The court thought this inappropriate and implicitly rejected our holding in *Walton*. The court then relied on *Phipps* and required discovery with an *in camera* hearing in the presence of counsel, to be held if a privilege was asserted. Defendant asserts *Dace* requires a different resolution of the present case.

Our reading of *Dace* indicates otherwise. The court's main concern in that case was that the trial court only reviewed the involuntary commitment court file and had no information as to diagnosis, treatment, or release. Accordingly, it found the trial court could not conclude, from the absence of this information, that the witness' mental health history was irrelevant or immaterial. (*Dace*, 114 Ill. App. 3d at 915, 449 N.E.2d at 1035.) The clear inference of that statement is that if the court had reviewed this information and determined this information was not material or relevant, the procedure would have been proper. In our present case, the court did review all the information in determining the records were immaterial and irrelevant. This is all that *Dace* requires.

■ Defendant maintains his counsel should have been present at the time the court examined the records. However, counsel is only to be present once the court has determined the records are discoverable and a statutory privilege is asserted. This was not the present situation.

Finally, even if there had been some error with the court's procedure, this error would have been harmless. We have reviewed the records in question. There is no information contained therein which would have any bearing on the victim's credibility. Defendant already had knowledge of all the information.

■ Defendant next complains that the court erroneously quashed the subpoena that he had issued for Janet Benson, T.M.'s school teacher. Defendant had subpoenaed Benson to testify at the trial originally set for July 23. The school district then filed a motion for protective order asserting that it could not disseminate, without a court order, information contained in the student file, and there was concern that Benson would be asked to testify concerning this information. Defense counsel stated that he wished to have Benson testify in regard to T.M.'s credibility. It appears counsel had not spoken with Benson and was unaware of the exact nature of her testimony. Counsel conceded that during the testimony there was a possibility that Benson would go

into information contained in the files. A hearing similar to a *voir dire* was set up to allow defendant to question Benson in a manner similar to trial. After the questioning, the court would determine what part, if any, would be allowed into evidence. Defense counsel refused to proceed with the questioning, and the subpoena was quashed.

Defendant maintains this decision is improper since it prevents him from investigating his case and putting on a defense. However, we find defendant, by failing to proceed with the *voir dire* examination, has waived this argument.

■ It is well settled in Illinois that to preserve for review an allegation of error concerning the exclusion of evidence, a party must make an offer of proof as to what the evidence would be. (*Grosh v. Acom* (1927), 325 Ill. 474, 490, 156 N.E. 485, 491; *Chicago City Ry. Co. v. Carroll* (1903), 206 Ill. 318, 328-29, 68 N.E. 1087, 1091; *Peluso v. Singer General Precision, Inc.* (1977), 47 Ill. App. 3d 842, 854, 365 N.E.2d 390, 399; *Del Rosario v. Del Rosario* (1970), 133 Ill. App. 2d 8, 13, 270 N.E.2d 160, 164.) The salutary purpose of the rule is evident. An offer of proof is necessary in order to apprise the court of the substance of the testimony to be admitted. (*Peluso*, 47 Ill. App. 3d at 854, 365 N.E.2d at 399.) Without such preservation of evidence, it is impossible for the court to determine the probative value of the proffered testimony. (*Del Rosario*, 133 Ill. App. 2d at 13, 270 N.E.2d at 164.) Without knowing this, it is impossible for the court to make an evaluation as to the correctness of the exclusion and any prejudice suffered.

In the present case, defendant was given an opportunity in the *voir dire* hearing to provide the court with the evidence he wished presented at trial. Defendant refused to proceed. This failure to present the evidence makes it impossible to determine any prejudicial impact caused by the court's ruling. Since at trial defendant admitted he was unsure of what Benson's testimony would be, it would be pure speculation on our part to determine if defendant suffered any injury by the court's refusal to let Benson testify. This problem could have been avoided if the testimony had been elicited. Since it was not, the question has not been preserved for our review.

Defendant maintains, however, that he should not have been placed in that position. He states that he was not attempting to elicit testimony concerning T.M.'s school file but was trying to investigate Benson's personal observations about T.M.'s credibility. Further, he asserts that he was placed in an impossible situation by having to show good cause without being able to interview Benson ahead of time. We disagree.

The privilege in question provides:

"No school student records or information contained therein may be released, transferred, disclosed or otherwise disseminated, except as follows:

\* \* \*

(5) Pursuant to a court order \*\*\*." (Ill. Rev. Stat. 1985, ch. 122, par. 50—6(a)(5).)

Once the school authority asserted this privilege, the court was required to address it. Defendant, at trial, acknowledged some information in the school files might be included in the testimony. Accordingly, it was necessary for the court to balance the competing interests.

We are struck by the parallel circumstances to the earlier discussed cases involving discovery of the medical records. In those cases, we held that if a statutory privilege was exercised, the court was to hold an *in camera* hearing with the attorneys present and was to permit disclosure of only that which the court determined was relevant and material to the case. (*Phipps*, 98 Ill. App. 3d at 418, 424 N.E.2d at 730.) In essence, that is what the court did in the present case except it involved testimony and not review of records. An *in camera voir dire* was scheduled with only counsel present, and defendant was allowed to question as he would at trial. When this was completed, the court would then evaluate the desired testimony in view of the privilege. The court could determine the testimony was outside the privileged information, or the information was covered by the privilege, but since it was relevant and material should be admitted, or the information was privileged and inadmissible. We find this to be a logical approach to a difficult problem and find no error in the procedure used.

Defendant's assertion that the procedure was improper because he had no idea what Benson would say is also meritless. The court at no time directed that counsel could not speak with Benson. Counsel could have done so either prior to issuance of the subpoena or after. We acknowledge that Benson might not speak with him and, in fact, cannot be ordered to do so. (*People v. Borawski* (1978), 61 Ill. App. 3d 774, 778, 378 N.E.2d 255, 258.) However, even if that is the case, defendant actually had an opportunity with the *voir dire*-type hearing to accomplish this purpose. This is an opportunity he declined.

██ █ Defendant next maintains he was not proved guilty beyond a reasonable doubt. A reviewing court will set aside a guilty finding only if the evidence is so palpably contrary to the finding or so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt about the accused's guilt. (*People v. Reese* (1973), 54 Ill. 2d 51, 58, 294 N.E.2d 288, 291.) In a prosecution for sexual assault, the law requires the victim's testimony to be either clear and convincing or corrobo-

rated. (*People v. Reaves* (1962), 24 Ill. 2d 380, 382, 183 N.E.2d 169, 170; *People v. Henne* (1988), 165 Ill. App. 3d 315, 323, 518 N.E.2d 1276, 1281.) Clear and convincing evidence is not synonymous with uncontradicted or unimpeached testimony (*Henne*, 165 Ill. App. 3d at 324, 518 N.E.2d at 1281), nor does the testimony need be crystal clear and perfect in order to be clear and convincing (*People v. Powell* (1985), 138 Ill. App. 3d 150, 156, 485 N.E.2d 560, 564). It is the task of the trier of fact to weigh any discrepancies, and if the discrepancies do not detract from the reasonableness of the testimony, the testimony can be found clear and convincing. *People v. Redman* (1986), 141 Ill. App. 3d 691, 703, 490 N.E.2d 958, 965.

■■ The trial court found T.M.'s testimony clear and convincing, with which we agree. She testified strongly concerning the specifics of the assault. While she might not remember incidental details, such as time and what type of clothing she wore, this was attributable to her young age. She maintained what happened in the order in which it occurred on both direct and cross-examination.

T.M.'s testimony was also corroborated. The evidence established she was upset from the moment her father picked her up. As soon as she saw her mother, she told her. She then reported to others that evening. T.M. began wetting her bed at night and having nightmares, two problems she had not exhibited prior to the incident. Finally, the fact saliva was discovered in the crotch of the underwear she was wearing is, by itself, more than sufficient corroboration.

Defendant next asserts the court erred at the sentencing hearing by allowing admission of a written victim's statement prepared by the parents and allowing the mother to testify. He initially observes correctly that the Bill of Rights for Victims and Witnesses of Violent Crime Act (Victims' Rights Act) (Ill. Rev. Stat. 1985, ch. 38, par. 1401 *et seq.*) does not apply because the crime was not accompanied by the use of force or the threat of force. Accordingly, he asserts the written statement is inadmissible.

■■ However, defendant misapprehends the nature of the written statement. A review of the record establishes that the written statement was not prepared pursuant to the Victims' Rights Act but rather was part of the presentence report. A presentence report is required to contain information about the effect the offense has had on the victim. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—2(a)(3).) In this case, the presentence report provided that a letter had been requested from the victim for this provision. This procedure has been held to be appropriate since hearsay is admissible in a presentence report. *People v. Hengl* (1986), 144 Ill. App. 3d 405, 406-07, 494 N.E.2d 937, 938; *People v.*

*Bachman* (1981), 92 Ill. App. 3d 419, 424-25, 414 N.E.2d 1369, 1374.

Defendant asserts this statement is improper because it was prepared by the parents and not the victim. There is no requirement that the information contained in the presentence report be prepared by the victim. As noted, hearsay is admissible. In *People v. Reid* (1987), 160 Ill. App. 3d 491, 513 N.E.2d 517, we found no error in the parents of a seven-year-old preparing the written statement since the child of that age is not capable of properly preparing a statement describing the physical and emotional impact of the crime on her life. While that case was under the Victims' Rights Act and this is not, this logic is still persuasive.

■■ Further, defendant was asked if he had any corrections or objections to the presentence report which included the written statement. He indicated some minor corrections but did not question the written statement. Failure to bring any inaccuracies or deficiencies in a presentence report to the trial court's attention results in any such questions being waived. *People v. Meeks* (1980), 81 Ill. 2d 524, 533, 411 N.E.2d 9, 14.

■■ Defendant also objects to the testimony of T.M.'s mother at the sentencing hearing. She testified concerning T.M.'s nightmares and bed-wettings, which she testified to at trial. This information was also contained in the aforementioned written statement. Accordingly, even if this testimony was improper, a question we do not now address, it was at most harmless error.

Defendant lastly urges that the sentence imposed is improper. He observes the court found a prison sentence was required because probation would deprecate the seriousness of the offense. However, he argues the full finding necessary to support a denial of probation is that probation would deprecate the seriousness of the offense *and* would be inconsistent with the ends of justice. (*People v. Knowles* (1979), 70 Ill. App. 3d 30, 33, 388 N.E.2d 261, 264.) He asserts the denial of probation is improper since the court did not consider whether probation was inconsistent with the ends of justice, and an analysis of the factors make clear that it would not be so.

■■ Imposition of a sentence is in the purview of the trial court and will not be disturbed absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) Whenever a sentence of imprisonment is imposed, the record must indicate that imprisonment is necessary for the protection of the public, or probation would deprecate the seriousness of the offense and would be inconsistent with the ends of justice. (*People v. Cox* (1980), 82 Ill. 2d 268, 281, 412 N.E.2d 541, 548.) Substantial compliance is all that is re-

quired, and it may exist even if the judge does not specifically state the phrase. *Cox*, 82 Ill. 2d at 281, 412 N.E.2d at 548.

In imposing sentence, the court reviewed all the evidence and stated:

> "In this particular matter, the Court does feel that a sentence of probation or of conditional discharge would deprecate the seriousness of the offense. And the court does consider that the nature and the circumstances of the offense and that the public interest in this particular matter does require that there be a period of imprisonment with the Department of Corrections."

The trial court is not required to use any magic language. (*People v. Kirk* (1986), 141 Ill. App. 3d 971, 973, 491 N.E.2d 78, 80.) The requisite substantial compliance exists.

We also note that in *People v. Edwards* (1982), 106 Ill. App. 3d 918, 436 N.E.2d 727, we found that our earlier decision in *Knowles* was effectively overruled by *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, and that a belief by the court that probation would deprecate the seriousness of the offense is a justifiable reason for denying probation.

■■■ Similarly, we find no abuse of discretion with the imposed sentence. The record establishes the court reviewed all the relevant factors. The court acknowledged defendant's lack of prior criminal record. However, the court found the factors in aggravation, particularly that of section 5—5—3.2(a)(13) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(13)), outweighed the mitigating elements. It is not our function to serve as a sentencing court and substitute our judgment for that of the trial court simply because we might have balanced the appropriate factors differently. (*Cox*, 82 Ill. 2d at 280, 412 N.E.2d at 547.) After all, the trial court in the course of the trial and the sentencing hearing has an opportunity to consider these factors which is superior to that afforded by the cold record on review. (*Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.) Our review of the record establishes no abuse of discretion occurred.

Affirmed.

GREEN, P.J., and SPITZ, J., concur.