**Robert Earl MAY, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 06–03–00168–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted June 23, 2004.

Decided June 24, 2004.

Tim Cone, Gilmer, for Appellant.

Ray Bowman, Asst. Dist. Atty., Long-view, for State.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Robert Earl May, a gymnastics coach, appeals from his convictions for two offenses. In this case, he was convicted of aggravated sexual assault on a child under the age of fourteen. In a companion case, tried at the same time as this case, and which is also on appeal under cause number 06–03–00169–CR, he was convicted for indecency with a child, enhanced to a first degree felony. The court assessed punishment at life imprisonment in each case and ordered the sentences to run consecutively.

May contends the evidence is legally and factually insufficient to support his conviction. He also contends that the court erred by having an incorrect part of the testimony read to the jury during its deliberations and that there was no defined dispute among the jurors which justified any reading of testimony to the jury. May further contends the court erred by not suppressing his statement made to the police, by allowing the State to enhance punishment, by refusing to provide him with the victim's school records, and by improperly admitting two segments of testimony. We overrule these contentions and affirm the judgment.

*Legal and Factual Sufficiency*

In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In reviewing the factual sufficiency of the evidence, we are required to determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, No. 539–02, —— S.W.3d ——, ——, 2004 WL 840786, at *7, 2004 Tex.Crim. App. LEXIS 668, at *20 (Tex.Crim.App. Apr. 21, 2004). There are two ways in which we may find the evidence to be factually insufficient. First, if the evi-

dence supporting the verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence insufficient. *Id.* Second, if—when we weigh the evidence supporting and contravening the conviction—we conclude that the contrary evidence is strong enough that the state could not have met its burden of proof, we must find the evidence insufficient. *Id.* "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard." *Id.* If the evidence is factually insufficient, then we must reverse the judgment and remand for a new trial. *Clewis v. State,* 922 S.W.2d 126, 135 (Tex.Crim.App.1996).

■ In this case, the victim, B.B., testified she had awakened to find May pulling down her pants and putting his tongue on and in her vagina. She testified that she made him stop and that he asked her not to tell and said he would never do it again. That testimony, standing alone, is legally sufficient evidence to support the verdict.[1]

In analyzing the evidence for factual sufficiency, however, we look at all of the evidence. There is evidence from the victim as set out above. She also testified May gave her several gifts, including a small television and a VCR, and had written a number of letters to her. He also made her the payable on death (P.O.D.) beneficiary of a certificate of deposit (CD) for $1,000.00. May's gift giving, however, was not restricted to B.B. There is testimony he gave small gifts and money to a number of his students. The sums of money he gave the other students, however, were much smaller than the $1,000.00 CD for which he made B.B. the P.O.D.

beneficiary. The evidence further shows that May also wrote letters to many of his other students similar to the ones he sent B.B. Samples of the letters are in the record, and they are either holiday notes or notes encouraging the students to practice their gymnastics.

The evidence also shows that May, a retiree, provided B.B. and others with gymnastics lessons free of cost. May's own apartment was his gymnastics studio, and he provided the leotards the girls wore during lessons. He laundered the leotards himself and kept them at his apartment/studio. B.B. testified May preferred the girls not wear any undergarments during the lessons. H.M., the victim in the companion case, testified May never told them they could not wear anything under their leotards.

B.B. said she did not immediately tell anyone about May molesting her because she was afraid he would hurt her. She later admitted, however, that May had never threatened or harmed her.

H.M., age fourteen at the time of trial, also took gymnastics lessons from May. She and B.B. were best friends. H.M. testified that, on one occasion when she and B.B. were at May's apartment, May touched her on the breast, and she further testified that he also tried to touch her "private," but she pushed his hand away. She also testified May reached for her buttocks.

Carol Baird, B.B.'s grandmother and with whom B.B. lived, testified that, after learning of May's molestation of B.B. and H.M., the three of them went to the home of her niece, Denise Alderete. Alderete has two daughters who also took gymnas-

---

1. B.B.'s age at the time of the alleged offense is not clear. The indictment alleges that the offense occurred on or about March 1, 1998, more than five years before trial. B.B. had just turned fourteen at the time of trial. She testified, however, that the offense occurred when she was about ten or eleven.

tics lessons from May. Baird asked A.A., one of Alderete's daughters, if she had been molested by May. She answered that she had not.

Seth Vanover, a police detective, testified he interviewed May on two occasions. Although May denied the allegations made against him, when confronted with the specific allegation made by B.B., Vanover quoted May as saying, "Well, the only time I can think she may have—something like this could have happened is when she was pretending to be asleep on my bed, and I leaned down to give her a kiss on her lips, because I told her she needed to be kissed so she could wake up." Concerning inappropriate touching of his students, May told Vanover that, because he was a gymnastics instructor, he "would always accidentally touch them somewhere," but that he was careful about how he touched girls. He also told Vanover that, if Vanover thought he (May) had a problem, he would get treatment for his problem with little girls.[2]

Alderete's fourteen-year-old daughter, A.A., testified that B.B. told her May had only touched her on her bottom with a noodle (a swimming toy) while playing a game, that she was the only one anything ever happened to, and that nothing had happened to H.M. A.A. further testified that B.B. told her May had not engaged in oral sex with her and that she made up the story to get money for herself and her boyfriend. A.A. also testified that H.M. had admitted that her story was not true and that she wanted to come forward and say so, but was afraid she would get in trouble and lose her friendship with B.B.

A.A. further testified she was present when Baird, B.B., and H.M. came to her mother's house and talked to them on the front porch about what May had done. A.A. described the actions of B.B. and H.M. on this occasion as follows:

They were laughing, turning cartwheels, doing flip-flops in the front yard, and they, I mean, they were just like smiling. And when they were telling us what had—what was going on, [B.B.] would be saying something or [H.M.] would be saying something and [B.B.] would say, "huh-uh (negative), that isn't how to say it," and like elbow her. And she'd be like, "Do you remember this?" and [H.M.'s] like, "No." And she'd elbow her, and she was like, "Oh, yeah. Oh, yeah." And they would go off to the side and start saying some more things, you know. And we were just like, so what happened? What happened? And one was saying one story and the other was saying a different one.

Alderete confirmed A.A.'s story about the porch discussion and the actions of B.B. and H.M. on that occasion.

B.B. denied telling A.A. that the allegations had never occurred or that she made up the story because she wanted money from May. She also denied that she and H.M. had told A.A. and Alderete about the allegations in a laughing manner or that she told H.M. what to say. H.M. also denied that she and B.B. were laughing or giggling when they told Alderete and A.A. about what had happened to them, and denied that B.B. told her what to say. She also denied telling A.A. that May never touched her inappropriately. Baird also denied A.A.'s version of the girls' actions on this occasion and testified B.B. was crying and upset.

**2.** When asked if May's "mannerism to some degree is meek and mild," Vanover answered that "most pedophiles are." Vanover's non-responsive answer was improper and highly prejudicial. Counsel objected, but failed to obtain a ruling from the court or otherwise pursue the matter.

■ Because the jury is the judge of the facts, and the appellate court's role is to review criminal convictions, the appellate court is not allowed to "find" facts or substitute its judgment for that of the jury. *Zuniga,* —— S.W.3d at ——, 2004 WL 840786, at *4, 2004 Tex.Crim.App. LEXIS 668, at *11. Although the evidence is conflicting, when we consider all the evidence in a neutral light, we conclude that the contrary evidence is not strong enough to require us to find that the jury could not have reasonably concluded the State proved its case beyond a reasonable doubt. *See id.* at 104, 2004 WL 840786, at *7, 2004 Tex.Crim.App. LEXIS 668, at *20. The contention of error is overruled.

### Reading of the Testimony to the Jury

May next contends the trial court improperly read a portion of the testimony back to the jury. He contends the request for the testimony of "Seth" (Vanover) about "the Kiss or (unintelligible) Mayes [sic] needing help about little girls" was inadequate to show a disagreement that would allow the testimony to be read, and further argues that the wrong portion of the record was read to the jury.

First, the jury must indicate clearly that it disagrees about the content of the testimony, and the court is to have read only that part of the witness testimony or point that is in dispute, *and no other.* Tex.Code Crim. Proc. Ann. art. 36.28 (Vernon 1981). In determining what testimony is to be read, the court is to interpret the jury's communication, decide what sections of testimony will best answer the inquiry, and limit the reading accordingly. *Brown v. State,* 870 S.W.2d 53, 55 (Tex.Crim.App. 1994).

■ When reviewing a claim of error in this context, we are to look to see whether the trial court abused its discretion in determining what sections of the testimony will best answer a request for reading of testimony. *Iness v. State,* 606 S.W.2d 306, 314 (Tex.Crim.App.1980). We are not to disturb that decision unless a clear abuse of discretion and harm has been shown. *Brown,* 870 S.W.2d at 55; *see Jones v. State,* 706 S.W.2d 664, 668 (Tex.Crim.App. 1986). The trial court abuses its discretion when it allows portions of testimony not related to the jury's inquiry to be read. *Iness,* 606 S.W.2d at 314, *citing Pugh v. State,* 376 S.W.2d 760 (Tex.Crim.App. 1964).

The jury's request does not suggest there was any disagreement about the testimony. It is at most a request to hear the testimony again. The trial court presumed there was a dispute because it had earlier told the jury it could only hear testimony if there was a dispute and the jury then asked for testimony.

This Court has recently addressed such a situation. In *Randon v. State,* 107 S.W.3d 646, 650 (Tex.App.-Texarkana 2003, no pet.), we recognized the opinions holding that a court could reasonably look at successive notes that became more narrowly tailored, combined with recitations by the trial court informing the jury it could only obtain the testimony if there was a dispute about particular testimony, as adequately meeting the requirements of Article 36.28.

■ In this case, the jury's first note asks for "Seth's testimony." That request was denied, and the jury was instructed that a dispute about specific testimony must exist before testimony could be read. The next note specified that the jury wanted testimony about the defense asking Seth about the kiss. In that context, as in *Randon,* we find it reasonable for the trial court to infer a disagreement among the jury members regarding the detective's testimony, because the jury's subsequent

request was narrower than its first request and was made after the trial court had instructed the jury it could not read back testimony unless the jury had a disagreement. *See Robison v. State*, 888 S.W.2d 473, 481 (Tex.Crim.App.1994). Accordingly, we cannot say the trial court abused its discretion in deciding to read the testimony.

■ However, we are still confronted with the extent of the testimony read. The jury specifically asked for the defense's questions on the topic. The court read back the State's questions and the detective's answers before moving to the defense's questions and the answers. This is obvious error. It was not, however, preserved for our review. Complaints about error in the reading of trial testimony must be preserved by objection at the time of the reading. *Hollins v. State*, 805 S.W.2d 475, 476 (Tex.Crim.App.1991); *Randon*, 107 S.W.3d at 649. There was no timely objection; thus, we may not address this issue on its merits. The contention is overruled.

*Suppression of Statement*

■ May next contends the court erred by not suppressing his statement because it was not given voluntarily. Article 38.22 of the Code of Criminal Procedure and *Miranda* apply only to statements made as the result of custodial interrogation. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 5 (Vernon Supp. 2004); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Whether a person is in custody is an objective determination based on all the circumstances. *See Dowthitt v. State*, 931 S.W.2d 244, 254–55 (Tex.Crim. App.1996). A person is in custody only if, under all the circumstances, a reasonable, innocent person would believe that the person's freedom of movement was restrained to the degree associated with an arrest. *See id.* at 255.

■ The evidence shows that May went voluntarily to the police station and that he was permitted to leave after both the first and second interviews. The evidence shows that he was not physically restrained. There is testimony that the interrogator shouted at him, made accusations against him beyond anything suggested by the victim, told him he would never see his grandchildren again, and that the interrogator at least touched May's hand during the interview. This does not, however, necessarily show that May was in custody at the time he submitted to the interrogation. Under an abuse of discretion standard, we conclude the trial court had sufficient evidence before it to allow it to determine May was not in custody.

■ Even in the absence of custody, however, due process may be violated by admitting confessions that are not voluntarily given. *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex.Crim.App.1996). A statement is not voluntary if there was "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1995). If raised by the defendant, the state bears the burden of proving by a preponderance of the evidence that the statement was given voluntarily. *Id.* The trial court is the sole judge of the weight and credibility of the evidence, and the trial court's finding on voluntariness may not be disturbed on appeal absent an abuse of discretion. *Id.; Martinez v. State*, 131 S.W.3d 22 (Tex.App.-San Antonio 2003, no pet.).

■ In this case, there was evidence from which the court could determine May

was not coerced into making the statement. No abuse of discretion has therefore been shown. The contention of error is overruled.

## Enhancement of Punishment

May next contends the trial court erred by allowing the State to enhance punishment. He argues that adequate and proper notice was not given of the intent to enhance. The record shows, however, that notice was given by a "STATE'S NOTICE OF INTENT TO SEEK ENHANCED PUNISHMENT DUE TO PRIOR FELONY CONVICTIONS." As recently acknowledged by this Court, the Texas Court of Criminal Appeals has held that prior convictions used as enhancements must be pled in some form, but not necessarily in the indictment. *Brooks v. State*, 957 S.W.2d 30, 33 (Tex.Crim.App.1997); *Cochran v. State*, 107 S.W.3d 96, 98 (Tex. App.-Texarkana 2003, no pet.) (finding a letter inadequate to meet requirements).

In this case, the document is a pleading. That is sufficient to meet the requirements of *Brooks*. The contention of error is overruled.

## Disclosure of Victim's School Records

May next contends the trial court erred by refusing to allow him to discover B.B.'s school records pursuant to his subpoena duces tecum. Counsel sought those records, arguing they might allow him to impeach the victim or locate witnesses who could testify about her reputation for truthfulness. The court reviewed the records in camera under a motion to quash filed by the school and the State, and determined they should not be turned over to counsel. The records have been provided to this Court for review. Counsel has made no specific argument concerning harm, which is entirely reasonable given that he has not been allowed to examine the documents involved.

The school cited the court to 20 U.S.C.A. § 1232g(b)(2)(A), (B) (West 2000) as reason to quash.[3] That statute provides that the federal government shall not make funds available to any school that releases a student's records without a parent's consent or pursuant to a lawfully issued subpoena. The denial of a proper discovery request, either during or before trial, may violate a defendant's due process rights. *Thomas v. State*, 837 S.W.2d 106, 111–12 (Tex.Crim.App.1992); *Valdez v. State*, 116 S.W.3d 94, 99 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd); *Ealoms v. State*, 983 S.W.2d 853, 860 (Tex.App.-Waco 1998, pet. ref'd).

Discovery requests by defendants in criminal cases are an area of the law that is deserving of attention. The rules and statutes address to some extent requests for discovery by a defendant from the state, or requests for subpoenas of documents from a witness. *See* Tex.Code Crim. Proc. Ann. art. 42.01, et seq. (Vernon 1979 & Supp.2004). They do not cover this situation, where defense counsel seeks documents not from the State, but from a public school. Counsel states that his purpose in seeking B.B.'s disciplinary records was to determine whether he could obtain information that would then direct him to individuals in the school who could speak with knowledge about B.B.'s reputation as a truthful or untruthful person. *See* Tex.R. Evid. 404, 405 (methods of proving

---

**3.** That section of the federal statute is incorporated into Texas statutory law by Tex. Gov't Code Ann. § 552.026 (Vernon 1994). *See also* Tex. Gov't Code Ann. § 552.114 (Vernon Supp. 2004) (which provides in part records may be obtained by person conducting child abuse investigation); Tex. Educ.Code Ann. § 37.084 (Vernon Supp.2004) (which authorizes various governmental agencies to obtain records for juvenile prosecution).

character), 607, 608 (impeachment by evidence of character).

The rules do not address this matter. In *Cooks v. State*, 844 S.W.2d 697, 736 (Tex.Crim.App.1992), the court addressed an issue where a defendant complained he could not effectively cross-examine his teacher's reputation testimony because he did not have certain school records. The court did not hold that such records were unavailable, instead focusing on the lack of any showing of harm resulting from the unavailability of those records.

In cases from other jurisdictions, an Arizona court of appeals in *State v. Birdsall*, 116 Ariz. 196, 568 P.2d 1094 (Ct.App.1977), reviewed a general criminal rule specifically allowing discovery in criminal cases, noting that school disciplinary records would definitely be relevant and material where the issue was the reputation for aggressiveness and belligerence of the victim, and found no abuse of discretion in allowing disclosure. Similarly, an Illinois court of appeals in *People v. Monk*, 174 Ill.App.3d 528, 124 Ill.Dec. 172, 528 N.E.2d 1063, 1068 (1988), discussed the method to be used when a school authority refused to produce school files. In that case, the defendant was also seeking to use the files for cross-examination, in connection with an attempt to ascertain a teacher's reasoning about the credibility of the victim. That court used essentially the same procedure utilized in this case: an in camera inspection by the trial court with an ensuing determination of whether the documents were relevant and material.

In *Zaal v. State*, 326 Md. 54, 602 A.2d 1247 (1992), the court made a detailed analysis of the privacy and confidentiality considerations involved in the release of school records in the context of an allegation of sexual child abuse by a grandfather on his granddaughter. The court recognized that the issue, quite clearly, was one of credibility of the witness and that the need was to determine whether the documents would be admissible, either directly, or usable for impeachment purposes, or that which would lead to such evidence. That court agreed some type of in camera inspection would be appropriate and directed the trial court to utilize a modified form of in camera inspection with the option of allowing controlled access by counsel to the records so that the sides could act as advocates for their respective positions in determining the admissibility of the portions of the record found to be relevant. *Id.* at 1264.

██ We conclude that the in camera inspection performed by the trial court is a procedure adequate to protect the defendant's rights and ability to fairly present his or her case. Further, we have reviewed the documents. They generally reflect mild to violent misbehavior by B.B., as shown by several removals from the general school populace and from school transportation. We cannot say, however, that there is anything in those documents that could be used for impeachment or that shows B.B.'s reputation for truthfulness or untruthfulness. We, therefore, conclude no error has been shown in declining to order the documents produced. The contention of error is overruled.

*Prejudicial Extraneous Testimony*

May next contends the trial court erred by allowing Baird to introduce prejudicial extraneous matters before the jury over his objection. The complained-of testimony is included in the following context:

Q Where did he [May] come to talk to you?

A At my place of employment.

Q Okay. Go ahead, please.

A And he had told me that it never happened, and he had told me that previously he had—

[Defense Counsel]: Your Honor, may we approach the bench?

Although it is possible the witness was about to go into inappropriate matters, she did not do so before defense counsel intervened. The testimony actually given does not implicate any wrongdoing by May. No error has been shown.

*Hearsay Testimony*

■ May next contends the trial court erred by overruling his objection to specific hearsay testimony. In the testimony, the prosecutor was asking Baird about a conversation she had with Alderete, who later testified.[4]

Q Did she [Alderete] tell you why she suspected [molestation]?

A Well, in a way, yes, she did, because she told me that he was close to [B.B.]

[Defense Counsel]: Your Honor, I'm going to object, it's hearsay.

THE COURT: Overruled.

Q Go ahead.

A She told me that he was close to [B.B.], and it's like everything was for [B.B.], like numerous pictures and the things that he had bought [B.B.], TV's [sic], VCR's [sic], gymnastic mats, just numerous things he had bought her, and when they found out he had started a trust fund in her name, and she told me that she suspected it because of all of that.

Hearsay is a statement, other than one made by the declarant while testifying at the trial, offered for the truth of the matter asserted. Tex.R. Evid. 801(d). The

State argues this is not hearsay because the recounted statement is not one recounted for fact, but for the declarant's belief or opinion about her suspicions, not statements of fact. Such reasoning, if approved, would make any opinion admissible, even though the facts on which such opinion is based are inadmissible, without recourse to the hearsay objection. This is not consistent with the rule. "Matter asserted" includes any matter explicitly asserted, and any matter implied by a statement, if the probative value of the statement as offered flows from the declarant's belief as to the matter. Tex.R. Evid. 801(c). Hearsay evidence is not admissible. *See* Tex.R. Evid. 802. The matter asserted in this case was the opinion. It was hearsay and inadmissible.

■ We now turn to a harm analysis. In our review of nonconstitutional error, we are to disregard errors, defects, irregularities, or variances that do not affect substantial rights of the accused. Tex. R.App. P. 44.2(b). A "substantial right" is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect," we must conclude that the error was not harmful and allow the conviction to stand. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

■ In order to properly conduct a harm analysis under Rule 44.2(b), we conduct a harm analysis as a type of "other errors," and we must disregard the error unless it "affect[ed] [appellant's] substantial rights." Tex.R.App. P. 44.2(b). For claims of nonconstitutional error, the Tex-

---

4. When Alderete eventually testified, she was specifically asked if she had made such a statement. She denied it.

as Court of Criminal Appeals has held that "a conviction should not be overturned unless, after examining the record as a whole, a court concludes that an error may have had 'substantial influence' on the outcome of the proceeding." *Burnett v. State,* 88 S.W.3d 633, 637 (Tex.Crim.App.2002). In other words, if we have "a grave doubt" that the result was free from the substantial influence of the error, then we must reverse. *Id.* The court has explained that "grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 637–38, *citing O'Neal v. McAninch,* 513 U.S. 432, 435–36, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Thus, "in cases of grave doubt as to harmlessness the petitioner must win." *Id.* at 638.

In considering harm, we must review the entire record to determine whether the error had more than a slight influence on the verdict. *See King,* 953 S.W.2d at 271, *citing Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Reeves v. State,* 969 S.W.2d 471, 491 (Tex.App.-Waco 1998, pet. ref'd). If the court finds that the error did have more than a slight influence on the verdict, it must be concluded that the error affected the defendant's substantial rights in such a way as to require a new trial. *Reeves,* 969 S.W.2d at 491. If the court has grave doubts about the error's effect on the outcome, the case must be remanded for a new trial. *Id.* Otherwise, the court should disregard the error. *Id.; Lopez v. State,* 990 S.W.2d 770, 778 (Tex. App.-Austin 1999, no pet.).

The hearsay at issue was presented by the State during its case-in-chief before Alderete testified. At best, it constitutes a pre-emptive strike on her expected testimony, for the State cannot make the argument that it was impeach-ment evidence because Alderete had not yet testified. Alderete categorically denied that she said what Baird attributed to her. The harm lies in the fact the State was improperly allowed to present evidence through the outcry witness that Alderete had suspected that May was molesting B.B. even before she had made any outcry. The recounting of her suspicion is a portion of the testimony that does not appear elsewhere.

As previously discussed, from a factual sufficiency viewpoint, the evidence in this case is conflicting. When that is the case, an error in admitting evidence, that would not otherwise be egregious, may nevertheless have profound results. However, under all of the facts of this case, and after a complete review of the record, we find it unlikely that the single recounting of hearsay about a witness' "suspicion," especially when strongly and directly denied by the declarant herself, had more than a slight influence on the verdict. The contention of error is overruled.

*Conclusion*

We affirm the judgment.